Teresita Moral **BORJA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 97–70272.

United States Court of Appeals, Ninth Circuit.

Submitted March 13, 1998 *.

Decided March 20, 1998.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Robert B. Jobe, Law Offices of Robert B. Jobe, San Francisco, California, for petitioner Teresita Moral Borja.

Donald A. Couvillon, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for respondent Immigration and Naturalization Service.

Before: WOOD, Jr.,** HALL, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a Philippine citizen is entitled to asylum in the United States for treatment inflicted by the New People's Army.

## I

In September 1992, Teresita Moral Borja was working at her parents' shoe factory in the Philippines when two armed men approached her and declared their allegiance to the New People's Army ("NPA"), a communist faction which actively opposes the Philippine government. After brandishing their weapons, the men demanded that she join their organization and also pay them "revolutionary taxes" in the amount of 3,000 pesos per month. Borja adamantly refused to be recruited, insisting that she was "pro-government" and that she objected to the NPA's practice of "kill[ing] people, women and children." Borja also refused to pay the exaction, at least at first. But once one of the men put a gun to her head, she promised to comply.

For almost half a year, the NPA returned monthly, each time demanding payment of 3,000 pesos. Borja always obliged without further comment. In February 1993, however, the NPA doubled the requested exaction. When Borja resisted, the NPA assaulted her.

One man pulled a gun, while another slashed her right upper arm with a knife. They told her they would murder her if she did not have the money by the time they returned.

Believing she would be unsafe anywhere in the Philippines, Borja sought refuge in the United States in March 1993. Although authorized to stay in the country only until October 1993, she has yet to leave. In April 1995, Borja requested asylum and withholding of deportation under 8 U.S.C. §§ 1158 and 1253(h), respectively.[1] An immigration judge denied the requests, and the Board of Immigration Appeals ("BIA") affirmed in an en banc decision, 10–2. *See In re T–M–B–,* Int. Dec. 3307, 1997 WL 80988(BIA).

The BIA concluded that Borja's assault was not "on account of" her political opinion, as statutorily required. According to the BIA, an applicant "must produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or imputed protected ground [such as political opinion]." Because the NPA sought financial backing from business people *regardless of their political opinions,* the extortion and efforts to punish those victims who did not comply were not "on account of" political opinion, but rather a function of economics. Put simply, as the BIA saw it, Borja failed to show that the NPA's assaults were motivated by, or "directed toward modifying or punishing," her political opinion.

Borja timely petitions this court for review.

## II

To qualify for asylum, which is granted only in the Attorney General's discretion, an alien must demonstrate that she has been persecuted, or that she faces a well-founded fear of persecution, in her native country *on account of* her race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158. Withholding of de-

---

** The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. Because Borja's deportation proceeding began before April 1, 1997, the revision and recodifica-

tion of the immigration laws enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, does not apply to this case. *See* IIRIRA § 309(c)(1).

portation is mandatory, with certain exceptions not relevant here, if an "alien's life or freedom would be threatened [in the country to which she would be deported] *on account of* race religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (emphasis added). Borja contends that she qualifies for both asylum and withholding of deportation because the NPA persecuted her on account of her political opinion.

## A

The Board focused on the following question: Was the NPA *motivated*, at least in part, by Borja's political opinion? Determining that the abuse was not at all "directed toward modifying or punishing" that opinion, the BIA held that Borja was not entitled to relief. Borja challenges this interpretation of the words "on account of" as imposing on her an impermissible "specific-intent" requirement. To her, the test should not involve an inquiry into her *persecutors'* motives, but should instead concern whether her political opinion was "at the root of *her* behavior" that led to the persecution.

Were we to adopt Borja's proposed test, she could very well qualify for both asylum and withholding of deportation. Indeed, her political opinion might have been the reason for her refusal to continue paying taxes, and her refusal was, in turn, probably a direct cause of the assault. In other words, Borja's political opinion might have been a but-for cause of the persecution, and thus—at least in an attenuated sense—"at the root of" the persecution.

■ The basic problem with Borja's proposed test, however, is that it directly conflicts with Supreme Court precedent. The Court's decision in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), makes clear that a petitioner must provide evidence, either direct or circumstantial, of the *persecutor's* motives. *See id.* at 483, 112 S.Ct. at 816–17. As the Court noted:

> [The petitioner] objects that he cannot be expected to provide direct proof of his

persecutors' motives. We do not require that. *But since the statute makes motive critical, he must provide some evidence, direct or circumstantial.*

*Id.* at 483, 112 S.Ct. at 817 (emphasis added).[2] Thus, a petitioner cannot rest on evidence of her own motives or perceptions. Nevertheless, that is precisely what Borja's test would permit. By asking whether political opinion is "at the root of" her refusal to comply and her consequent persecution, Borja's proposed test impermissibly focuses on the victim's motives, instead of those of the persecutor.

■ The Sixth Circuit has specifically rejected this approach. In *Adhiyappa v. INS*, 58 F.3d 261 (6th Cir.1995), that court affirmed the BIA's conclusion that it was the petitioner's status as an informant, not his political opinion, that made him subject to persecution. *See id.* at 268. The court recognized that, under *Elias–Zacarias*, it is of little concern whether the *victim* acts on the basis of his political opinion: "[T]he motives of the asylum seeker are relevant only to the extent that they illuminate the motives of the alleged persecutors." *Id.* at 267. We adopt our sister circuit's reasoning and reject Borja's proposed test. Mere but-for causation is insufficient causation to meet the "on account of" requirement in the statutes. *Cf. Sangha v. INS*, 103 F.3d 1482, 1490 (9th Cir.1997) (concluding that victim must show, at the very least, that persecutors were aware of the victim's political opinions). Rather, we agree with the BIA that the appropriate inquiry is whether the persecutor was motivated at least in part by the victim's political opinion.

## B

■ When the BIA noted that Borja had "failed to demonstrate that the abuse she [had] suffered at the hands of the NPA [had] been] directed toward modifying and punishing political opinion," it was simply applying this very test. Contrary to Borja's claims, this test (which she improperly labels as an "intent" inquiry instead of a "motive" inqui-

---

**2.** *Elias-Zacarias* thus instructs courts to determine whether the *persecutor was motivated* by the *victim's political opinion,* not by the persecu- tor's political opinion. *See id.* at 482–83, 112 S.Ct. at 815–17.

ry) is firmly consistent with our own precedent, most notably *Pitcherskaia v. INS,* 118 F.3d 641 (9th Cir.1997). In *Pitcherskaia,* we held only that the definition of "persecution" lacked an intent requirement;[3] we did *not* also conclude that the definition of "on account of" lacked a motive requirement. *See id.* at 647. To the contrary, recalling *Elias–Zacarias,* we explained that "[m]otive of the alleged persecutor *is* a relevant and proper consideration ... insofar as the alien must establish that the persecution is inflicted on him or her 'on account of' a characteristic or perceived characteristic of the alien." *Id.* (emphasis added). Having already acknowledged a motive requirement within the definition of "on account of," we shall not reverse course today. When a persecutor targets a victim without regard for the victim's political opinion, we assuredly cannot conclude that the persecution was "on account of" that opinion. The BIA did not apply an erroneous legal test.

### III

■ Under this test, the remaining inquiry is a factual one: Was the BIA's determination of the NPA's motives supported by "substantial evidence"? *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). The BIA concluded that Borja was persecuted only because of her economic means; she would have been approached, extorted, and assaulted by the BIA regardless of her political opinions. To obtain reversal, Borja must show that the evidence *compels* a contrary result, namely that the NPA was motivated at least in part by her political opinion. *See id.* at 481 & n. 1, 112 S.Ct. at 815 & n. 1.

The BIA based its conclusion on several well-founded observations. First, Borja is from a family of means and was in a position

to supply the NPA with needed financial resources. Second, the NPA approached Borja only at her parents' place of business; Borja did not provide any evidence that the NPA sought her after the business closed or at the hospital at which she worked for fifteen years before leaving the Philippines. Third, Borja failed to demonstrate that she was treated any differently from others who were similarly situated economically. And fourth, as the country profile submitted by the Department of State's Bureau of Democracy reveals:

> A large proportion of Philippine asylum applicants allege that the NPA threatens them with death or other harm for refusing to support that organization financially. *In most instances, the NPA is not interested in the political opinion of its intended victim but in the victim's wealth.*

U.S. Dep't of State, The Philippines: Profile of Asylum Claims and Country Conditions 4 (1995) (emphasis added).

In response, Borja contends only that her situation was different from the typical case of NPA extortion—the distinction being her verbal protests. As mentioned above, Borja made it clear that her original refusal to pay was politically based: she told the two men who first approached her that she was "pro-government" and that she opposed the NPA's murderous tactics.

The most notable problem with Borja's argument, however, is that she spoke up to the NPA *only* in her first encounter with the organization, all the way back in September 1992. The NPA did not assault her until February 1993, and even then, only after she refused to comply with the requested "double tax."[4] Rather than reasserting her political beliefs, she merely told the two men that

---

3. The court held that *any* "infliction of suffering or harm upon those who differ" constitutes "persecution." *Id.* at 647. Even if the persecutor is attempting to "cure" his victim of a "disorder," the infliction of suffering or harm is persecution. *See id.* For example, Russia's attempts to eradicate Pitcherskaia's lesbian desires was "persecution," even though the Russian authorities may have believed they were beneficially treating an "illness." *See id.* at 646–47.

4. This fact distinguishes *Gonzales–Neyra v. INS,* 122 F.3d 1293 (9th Cir.1997), *amended by* 133

F.3d 726 (9th Cir.1998). In that case, the petitioner was threatened immediately after he expressed his political disagreement with the guerrilla organization and firmly declared that his refusal to pay was on account of that disagreement. *See id.* at 1294. Another distinguishing feature is that in *Gonzales–Neyra* the persecutors expressly stated their political motives: they ordered the victim to close his business simply because it "was not in accordance with their ideology." *Id.* at 1295.

"they were demanding too much" and that she did not "have that kind of money." Moreover, although her September statements of opposition had angered the two men who approached her, they left the store as soon as she paid the requested "revolutionary tax." Thus, it appears that the NPA was concerned only with "tax" collection. A reasonable fact finder would not be compelled to decide otherwise.

Moreover, as we recognized in *Sangha v. INS*, 103 F.3d 1482 (9th Cir.1997), there are generally only three situations in which this court has recognized the motivation requirement as being satisfied. *See id.* at 1490. The first is when the persecutors *say* they are acting because of the victim's political beliefs. The second is when there is *no other logical reason* for the persecution. And the third is when a *government* persecutes a victim in the absence of any legitimate criminal prosecution.[5] Borja's case does not fit within any of these three categories. Instead, it simply involves a guerrilla organization that uses terrorist tactics to ensure financial support. We are not compelled to conclude that the assault was motivated, even in part, by Borja's political opinion.

## IV

For the foregoing reasons, we deny the petition for review.

**DENIED.**

---

5. *Desir v. Ilchert,* 840 F.2d 723 (9th Cir.1988), the Haitian-extortion case, belongs in this category. In *Desir,* the petitioner argued that the Haitian government persecuted him on account of his political beliefs after he refused to comply with extortionate demands. This court concluded that, because the Haitian government operated as a "kleptocracy," a political system founded on extortion, any resistance to the extortion was tantamount to political opposition. Persecution against those who resisted was therefore persecution "on account of" political opinion.

