**Tomas Tabisula BRIONES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 97–70321.

United States Court of Appeals, Ninth Circuit.

Submitted March 13, 1998 *.

Decided March 20, 1998.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Bert M. Vega, San Francisco, California, for petitioner Tomas Tabisula Briones.

Regina Byrd, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for respondent Immigration and Naturalization Service.

Before: WOOD,** HALL, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In a companion case, *Borja v. INS,* No. 97–70272, 139 F.3d 1251, we considered whether a Philippine citizen is entitled to asylum in the United States for treatment inflicted by the New People's Army. In this case, we examine whether service as an informant for the Philippine military affects asylum eligibility.

I

Tomas Tabisula Briones was a professional artist in the Philippines who earned his living by painting landscapes throughout his country. His work took him to remote areas, which included hideouts of the New People's Army ("NPA"), a communist faction which actively opposes the Philippine government. Through his travels, he was able to obtain information about the NPA. Because of his access to such information, Briones was recruited in June 1990 by his cousin, Lieutenant Rey Briones, a member of the Philippine constabulary, to serve as a confidential military informant. Briones testified he was never paid for his services but agreed to serve as an informant because of concerns about the damage the NPA had caused to his hometown of Santo Domingo.

** The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

Briones presented testimony describing three occasions on which he provided information about NPA activities to his cousin. The information he provided purportedly: (1) resulted in a local military victory over the NPA in October 1990; (2) alerted the military to a planned NPA raid on Santo Domingo in November 1990, and (3) led to the capture of an important NPA leader in August 1991.

Sometime after Briones provided the foregoing information, his cousin showed him a military intelligence report which listed the people whom the NPA planned to assassinate. Briones testified that his name appeared seventh on the list. His cousin told him that the NPA knew he had informed against them. Fearing for his life, Briones and his family agreed he should move from Santo Domingo to Manila, the capital of the Philippines.

Before Briones moved to Manila, however, his wife discovered a package on their doorstep wrapped in black ribbon and marked with a communist symbol.[1] Briones initially testified that nothing but his name was written on the package. He later testified, however, that there was also a note inside the box which stated that he would "be killed next." In any event, Briones believed the package to be an NPA death threat. Consequently, he left Santo Domingo for Manila that day.

While in Manila, Briones claimed to have lived with various relatives and friends for a period of three months.[2] He stayed with no one continuously for more than a few days for his own protection. He did, however, perhaps surprisingly, maintain a high profile during this time, even attending an exhibition of his artwork "the whole month of December." Despite his relative prominence, Briones had no encounters or incidents with the NPA the entire time before he left for the United States.

In April 1992, Briones entered the United States as a visitor for pleasure and to participate in an art exhibition in Sacramento, California. Although authorized to stay in the country only until October 1992, he has yet to leave. In April 1993, Briones requested asylum and withholding of deportation under 8 U.S.C. §§ 1158 and 1253(h), respectively.[3] Briones based his application on his fear of future persecution on account of political opinion. An immigration judge denied the requests, and the Board of Immigration Appeals ("BIA") affirmed. The BIA based its decision on determinations that Briones's fear was not countrywide, that the feared persecution was not "on account of" any of the grounds for asylum listed in 8 U.S.C. § 1101(a)(42)(A), and that his failure to seek governmental protection before leaving the Philippines undermined his persecution claim.

Briones timely petitions this court for review.

## II

■ In the companion case, we considered what it means to be persecuted "on account of" one of the grounds enumerated in the statute, 8 U.S.C. § 1101(a)(42)(A). *See Borja*, 1252–53. Following the Supreme Court's decision in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), we held that a petitioner must provide evidence, either direct or circumstantial, of his *persecutor's* motives; it is not sufficient for a petitioner simply to provide evidence of his own motives or political opinion. *See Borja*, at 1252–53. A petitioner's own motives are relevant only insofar as they serve

---

1. It is unclear when the package was actually discovered. Briones initially testified that his wife found the package in September 1991. He later testified, however, that he received the package sometime in December 1990, about two weeks after the NPA's November 1990 raid on Santo Domingo.

2. It is uncertain how much time Briones actually spent in Manila before coming to the United States. Although Briones initially testified that he remained in Manila for only three months, he

subsequently testified that he did not leave Manila for the United States until April 1992, approximately seven months after he fled from Santo Domingo.

3. Because Briones's deportation proceeding began before April 1, 1997, the revision and recodification of the immigration laws enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, does not apply to this case. *See* IIRIRA § 309(c)(1).

to illuminate the motives of his alleged persecutors. *Id.* at 1253–54.

## III

■ Utilizing this approach, we must now ask whether the BIA's determination that Briones does not possess a well-founded fear of future persecution on account of political opinion was supported by substantial evidence. *See Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38. The BIA found:

> [Briones] does not claim that the NPA wants to harm him because of any political opinion he might hold, but because he cooperated with the military. We glean from the testimony that the NPA's interest is retaliation against a former informer, which would not be persecution on account of a protected status. It is reasonable to assume that any retaliation by the NPA would occur regardless of what political opinion, if any, the respondent held.

For us to reverse the BIA's determination, Briones must show that the evidence compels a contrary result, namely that the NPA was motivated, at least in part, by his political opinion. *See Borja,* at 1254.

We are guided in our inquiry by the Sixth Circuit's decision in *Adhiyappa v. INS,* 58 F.3d 261, 267 (6th Cir.1995), which also involved a former government informant who claimed to fear persecution from militant separatist groups "on account of his political opinion." *Id.* at 266. In *Adhiyappa,* the petitioner argued that by serving as an informant against the militant groups, he was expressing a political opinion hostile to his persecutors. His subsequent persecution therefore necessarily constituted "persecution on account of ... political opinion." *Id.* at 266–67. As did the petitioner in *Borja,* Adhiyappa challenged the requirement that he demonstrate that his persecutors targeted

him because of his political opinion as "unreasonably constrictive and overly burdensome." *Id.* at 268. The Sixth Circuit rejected his claim, holding that 8 U.S.C. § 1101(a)(42)(A) "provides protection for individuals who are persecuted on account of their political opinion, but it does not include all individuals who are persecuted because their actions tend to obstruct the activities of politically-motivated organizations, even where those activities may be in part motivated by political opinion." *Id.* The Sixth Circuit concluded that substantial evidence supported the BIA's determination that the persecutors' interest was retaliation against a perceived informer, which was not persecution on account of a protected status. *Id.* at 265. The court held that "the evidence would support a conclusion ... that it was [petitioner's] status as an informant, not his political opinion, that spurred [the persecutor's] hatred." *Id.* at 268.

■ We adopt the reasoning of our sister circuit and likewise hold that the BIA's determination that Briones does not possess a well-founded fear of persecution on account of political opinion was supported by substantial evidence. The focus of our inquiry is on the persecutor's motives; however, we recognize that in some cases the petitioner's motivations may serve to illuminate those of his persecutors.[4] *See Borja,* at 1252–53.

Briones maintains that the NPA's motivations were clearly demonstrated by his receipt of a package wrapped in black ribbon at his home and by the inclusion of his name on an NPA "hit list." We disagree. As we noted in *Borja,* there are generally only three situations in which this court has recognized the motivation requirement as being satisfied. *See Borja,* at 1255. The first is when the persecutors *say* they are acting because of the victim's political beliefs. The

---

4. We reject Briones's argument that his service as a confidential informant demonstrates that he was motivated by a political opinion contrary to the NPA. "One might undertake to inform government officials of the names of members of a militant separatist group for reasons other than political opinion, just as one might refuse to join a guerilla army for reasons other than political differences." *See Adhiyappa,* 58 F.3d at 267 (citing *Elias–Zacarias,* 921 F.2d 844). Briones's own testimony demonstrates that he agreed to serve as an informant because he was concerned about damage caused by the NPA to Santo Domingo, not because he was opposed to the NPA's ideology or political beliefs. Laudable as his motivations may have been, they were not on account of one of the enumerated grounds for asylum. Briones would likely have opposed any group in this situation, regardless of political ideology. Therefore, insofar as Briones's own motivations shed light on the motivations of his persecutors, it does not aid his claim.

second is when there is *no other logical reason* for the persecution. And the third is when a *government* persecutes a victim in the absence of any legitimate criminal prosecution. *Id.* Briones's case does not fit within any of these categories. There was no message, explicit or implicit, in either piece of evidence indicating that Briones was targeted on account of his political opinion. Moreover, there is another very logical explanation for Briones's persecution: as the BIA concluded, it was likely Briones's status as an informant, not his political opinion, that inspired the NPA's acrimony. Briones's activities obstructed those of the NPA on a least three occasions. It would be reasonable to expect that the NPA would attempt to remove or silence Briones as a matter of self-interest, irrespective of his political opinion. *See, e.g., Adhiyappa,* 58 F.3d at 268. Briones has presented no evidence that would compel us to find otherwise. We therefore uphold the BIA's decision.

█ We also hold that the BIA's other factual determinations concerning the objective and subjective reasonableness of Briones's fear of future persecution, whatever its motivation, are supported by substantial evidence. The BIA correctly found that Briones failed to present any evidence that the Philippine government would be either unable or unwilling to protect him or that he ever sought any such protection. *See Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir. 1997) (stating that "persecution" must be inflicted by government "or by persons or organizations which the government is unable or unwilling to control"). Further, the BIA found that Briones produced no evidence demonstrating that he would be persecuted countrywide in the Philippines. *See Singh v. Ilchert,* 63 F.3d 1501, 1511 (9th Cir.1995) (concluding that alien's ability to relocate within country from which he claims to fear persecution may be considered by BIA in cases in which it is not government that threatens persecution). This is especially significant in light of Briones's lengthy, uneventful stay in Manila. Finally, the State Department's Country Report supports the BIA's finding that the NPA's activities were and continue to be on the decline. Briones has not directed us to any evidence which would contest these findings. His asylum claim must therefore fail.

## IV

Because Briones has failed to establish a well-founded fear of persecution of the type that would entitle him to consideration for asylum, it necessarily follows that he has failed to make the more stringent showing required for withholding of deportation. *See Fisher v. INS,* 79 F.3d 955, 965 (9th Cir. 1996).

## V

For the foregoing reasons, we deny the petition for review.

**DENIED.**