**Baljinder Singh SANGHA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 95–70427.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1996.

Decided Jan. 9, 1997.

---

1484

Virender Kumar Goswami, Charles E. Nichol, San Francisco, CA, for petitioner.

Jeffrey J. Bernstein, United States Department of Justice, Washington, D.C., for respondent.

Before: GOODWIN, WALLACE, and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Baljinder Singh Sangha, an Indian national, petitions for review of the decision of the Board of Immigration Appeals ("BIA"). The BIA found that Sangha failed to show that he was persecuted on account of his political opinion. The BIA had jurisdiction under 8 C.F.R. §§ 3.1(b)(2), 242.21. We have juris-

diction pursuant to 8 U.S.C. § 1105a(a). The petition is denied.

## I. Facts

The facts in this case are not in dispute. Baljinder Singh Sangha, then fifteen years old, lived with his father, mother, and older brother on a farm in Punjab, India. He attended school and helped his father on the farm.

In June, 1991, Sangha's father, Gursewak Singh, joined the Akali Dal Langowal party, and in July he assumed a local leadership role. The Akali Dal party criticized the militants and terrorists then operating in the Punjab, and it promoted peaceful solutions to political problems. In August, 1991, Sangha's father gave a speech criticizing the Bhindrawala Tiger Force (BTF) for promoting violence in the Punjab. The BTF was an organization dedicated to the creation of a separate Sikh homeland, commonly known as Khalistan. Sangha testified that he himself was never a member of the Akali Dal party, "didn't know anything," but "supported his father" in his activities.

In September, 1991, four armed men forced their way into the Sangha home. They beat up Sangha's father until Sangha and his brother came to protect him. The men identified themselves as members of the BTF. They demanded that Sangha's father cease his political activities, pay them 100,000 rupees, and give over Sangha and his brother. They said they wanted the two brothers to fight for Khalistan and they wanted to make the brothers unavailable to support the father. They gave Sangha's father three weeks to comply.

Early the next morning, Sangha's whole family left for the neighboring state of Uttar Pradesh to stay away until the terrorists left. A month or two later, however, Sangha's father returned to the farm only to receive a letter from the BTF. This letter reiterated the BTF's demands and threatened to kill the Sangha family. Sangha's father thereupon returned to Uttar Pradesh and arranged for his two sons to leave India.

Sangha entered the United States illegally on January 29, 1992. When apprehended, he conceded deportability and applied for asylum or withholding of deportation based on his past persecution on account of political opinions. The immigration judge denied his application and ordered deportation. Sangha timely appealed to the BIA. The BIA affirmed the denial, and this petition ensued.

## II. Statutory Requirements

Grants of asylum are governed by Section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a). This section gives the Attorney General the discretion to grant asylum to aliens who qualify as "refugees." A "refugee" is defined as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987).

Sangha seeks asylum under the "persecution on account of ... political opinion" part of the section. In *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), the Supreme Court addressed this section in a case factually very similar to ours. Elias–Zacarias was recruited by guerillas, but refused to join. When the guerillas threatened, he fled to the United States, where the BIA refused asylum. Following the case law of our circuit, we reversed the BIA. In *Elias–Zacarias* the Supreme Court reversed.

■ In considering the availability of political asylum under this section, the Court narrowed our interpretations in three ways. First, to be eligible for asylum, the applicant must show the persecution occurred because of his own political opinion, and not because of the political opinions of his persecutor. "'[P]ersecution on account of ... political opinion' in § 101(a)(42) is persecution on account of the victim's political opinion, not the persecutor's." *Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. at 816.

■ Second, the victim must prove causal connection. The Court required that the

applicant establish by direct or circumstantial evidence that the persecution was "on account of" political opinion. *Elias–Zacarias*, 502 U.S. at 483, 112 S.Ct. at 816–17. Applicants can no longer establish that their persecution was "on account of" political opinion by inference, unless the inference is one that is clearly to be drawn from facts in evidence. That is, persecution on account of political opinion no longer can be inferred merely from acts of random violence by members of a village or political subdivision against their neighbors who may or may not have divergent religious or political views. *Cf. Hernandez–Ortiz v. INS*, 777 F.2d 509, 516–17 (9th Cir.1985). Persecution by antigovernment guerillas may no longer, from that fact alone, be presumed to be "on account of" political opinion. *Cf. Arteaga v. INS*, 836 F.2d 1227, 1231–32 (9th Cir.1988). The petitioner must prove something more than violence plus disparity of views.

■ Finally, the Court narrowed the scope of review of asylum decisions. The Court held that the BIA's determination that an applicant is not eligible for asylum "can be reversed only if the evidence presented ... was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. at 815. The Court continued, "[t]o reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *Id.* at 481 n. 1, 112 S.Ct. at 815 n. 1.

We discuss Sangha's petition for asylum based on persecution on account of political opinion under the new standards set forth by *Elias–Zacarias,* as elaborated by our subsequent cases.

### III. Standard of Review

■ In this case, we review for legal error the determination of the BIA that Sangha was not eligible for asylum. We review factual determinations of an applicant's statutory eligibility under a "substantial evidence" standard. *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. at 815. To obtain reversal, petitioner must show that "the evidence not only *supports* that conclusion, but *compels* it." *Id.*, at 481 n. 1, 112 S.Ct. at 815 n. 1.

### IV. Burden of Proof

■ The applicant bears the burden of establishing his eligibility under the Act. 8 C.F.R. § 208.13(a); *Ghaly v. INS*, 58 F.3d 1425, 1428 (9th Cir.1995). The applicant must establish his case by "credible, direct, and specific evidence" in the record. *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir.1995) (citation omitted). Because asylum cases are inherently difficult to prove, an applicant may establish his case through his own testimony alone. *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984).

### V. Elements of Petitioner's Case

■ After *Elias–Zacarias,* an asylum seeker claiming to be a victim of persecution on account of his or her political opinion must establish, by evidence, four facts: (a) that he or she has been a victim of persecution; (b) that he or she holds a political opinion; (c) that this political opinion is known to or imputed by the persecutors; and (d) the ensuing persecution of the victim has been or will be on account of this opinion.

#### (a) Persecution

■ Sangha's testimony established that he suffered past persecution. "Persecution" means "the infliction of suffering or harm upon those who differ ... in a way regarded as offensive." *Sagermark v. INS*, 767 F.2d 645, 649 (9th Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (quoting *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.1969)). "Persecution" may be inflicted either by the government or by persons or organizations which the government is unable or unwilling to control. *McMullen v. INS*, 658 F.2d 1312, 1315 (9th Cir.1981). Sangha's father suffered violence, Sangha suffered threats of violence.

The BTF is a terrorist group the government is unable to control. The BTF wanted to recruit Sangha and threatened him with death. These BTF actions are sufficient to show persecution under the Act. *See Arteaga,* 836 F.2d at 1232 ("Forced recruitment by a revolutionary army is tantamount to kidnapping, and is therefore persecution.")

### (b) Political Opinion

Sangha must next establish that in 1991–92 he had a political opinion. A number of our asylum cases decided before 1992 broadly defining persecution on account of political opinion, based on the political opinion of the persecutors, have been weakened by *Elias–Zacarias.* *See, e.g., Mendoza Perez v. INS,* 902 F.2d 760, 762 (9th Cir.1990); *Desir v. Ilchert,* 840 F.2d 723, 727 (9th Cir.1988); *Arteaga,* 836 F.2d at 1232 n. 8; *Zayas–Marini v. INS,* 785 F.2d 801, 806 (9th Cir. 1986); *Hernandez–Ortiz,* 777 F.2d at 516.

Since *Elias–Zacarias,* our cases have instead focused on the political opinions of the victims. Under our case law, and unchanged by *Elias–Zacarias,* an applicant can establish his political opinion on the basis of his own affirmative political views, his political neutrality, or a political opinion imputed to him by his persecutors. We consider each in turn as they apply to Sangha.

### (b1) Political Opinion–Affirmative

 The first way an applicant can establish a "political opinion" is to show his affirmative political beliefs. He can establish his political beliefs by testimony, *Rodriguez–Roman v. INS,* 98 F.3d 416, 419 (9th Cir.1996) (applicant "harbored life-long anti-Communist sympathies"), or as evidenced by his past activities, *Gomez–Saballos v. INS,* 79 F.3d 912, 917 (9th Cir.1996) (applicant was member of Sandinistas and political appointee in their government).

 In this case, Sangha did not establish that he held an affirmative political belief of his own. He testified that he was never a member of the Akali Dal Party, and he "didn't know anything." At the time of his persecution, he was living at home, going to school, and helping his father on the family farm. There is no evidence to show that Sangha had enunciated any affirmative political opinion or engaged in activities associated with affirmative political opinions. Sangha has therefore not established under the Act that he had his own affirmative political opinion.

### (b2) Political Opinion-Hazardous Neutrality

 A second way an applicant can establish a "political opinion" under the Act is to show political neutrality in an environment in which political neutrality is fraught with hazard, from governmental or uncontrolled anti-governmental forces. We have held that political neutrality can be a political opinion under the Act. *See, e.g, Maldonado–Cruz v. INS,* 883 F.2d 788, 791 (9th Cir. 1989); *Arteaga,* 836 F.2d at 1231–32. "Political neutrality" may include the absence of any political opinion. *Arriaga–Barrientos v. INS,* 937 F.2d 411, 413 (9th Cir.1991). An applicant can establish his political neutrality by pronouncement, *id.* at 414; *Bolanos–Hernandez,* 767 F.2d at 1286–87, or by his actions, *Ramos–Vasquez v. INS,* 57 F.3d 857, 863 (9th Cir.1995) (applicant deserts rather than illegally shoot deserters).

 We have held that an applicant's political neutrality must be the product of his conscious, deliberate choice. *Bolanos–Hernandez,* 767 F.2d at 1286. Further, the applicant "must not merely avow his political neutrality, however, but must also show that this opinion was articulated sufficiently for it to be the basis of his past or anticipated persecution." *Ramos–Vasquez,* 57 F.3d at 863.

 In a series of cases, we have held that an applicant can establish political neutrality by refusing in the face of threats to join guerilla or illegal government forces. *See, e.g., Del Valle v. INS,* 776 F.2d 1407, 1413–14 (9th Cir.1985); *Arteaga,* 836 F.2d at 1231–32; *Desir,* 840 F.2d at 728; *Maldonado–Cruz,* 883 F.2d at 791. This reasoning was questioned, but not overruled, in *Elias–Zacarias,* where the Court said it would distinguish political neutrality "from such quite different concepts as indifference, indecisiveness, and risk averseness." *Elias–Zacarias,* 502 U.S. at 483, 112 S.Ct. at 816. Recently, we have found political opinion based on neutrality when an applicant deserted from the military forces rather than be forced to shoot deserters illegally. *Ramos–Vasquez,* 57 F.3d at 863.

 In this case, Sangha has not argued, nor did the BIA have to believe, that he was

politically neutral. There is no evidence that Sangha made a deliberate and conscious decision to be politically neutral in the Punjab strife. There is no evidence that Sangha ever articulated political neutrality. His only action which might evidence political neutrality was his refusal to join and fight with the BTF. Under *Elias–Zacarias,* accordingly, it is doubtful that this single refusal could establish political neutrality. A reluctance to leave the family farm and go fight a cause he knew nothing of proves nothing about political opinion.

Nonetheless, we do not decide whether Sangha was politically neutral under our case law. As discussed below, his case fails because he produced no evidence that the BTF persecuted Sangha "on account of" any political view he might have held. It was therefore irrelevant whether or not Sangha was politically neutral.

### (b3) Political Opinion-Imputed

The third way an applicant can establish a "political opinion" under the Act is to show an imputed political opinion. An imputed political opinion is a political opinion attributed to the applicant by his persecutors. In *Elias–Zacarias* the Supreme Court left open the possibility that an applicant could claim asylum based on persecution based solely on the prosecutor's erroneous beliefs. *Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. at 815–16. In *Canas–Segovia* we held that imputed political belief was still a viable form of relief after *Elias–Zacarias.* *Canas–Segovia v. INS,* 970 F.2d 599, 601–02 (9th Cir.1992).

In establishing an imputed political opinion, the focus of inquiry turns away from the views of the victim to the views of the persecutor. *Id.* at 601–02. We consider, however, not the persecutor's own political opinions, but rather the political views the persecutor rightly or in error attributes to his victims. If the persecutor attributed a political opinion to the victim, and acted upon the attribution, this imputed view becomes the applicant's political opinion as required under the Act.

To establish an imputed political opinion, the applicant must show that his persecutors actually imputed a political opinion to him. *Arriaga–Barrientos,* 937 F.2d at 414; *Abedini v. INS,* 971 F.2d 188, 192 (9th Cir.1992). We have found an imputed political opinion in several different contexts. For example, one party to a conflict may insist to the victim that the victim is aligned with the other side. *See, e.g., Singh v. Ilchert,* 63 F.3d 1501, 1509 (9th Cir.1995); *Singh v. Ilchert,* 69 F.3d 375, 379 (9th Cir.1995); *Maldonado–Cruz,* 883 F.2d at 792. Or, the victim may have publicly expressed political views which could easily have been known to his persecutors. *Nasseri v. Moschorak,* 34 F.3d 723, 729–30 (9th Cir.1994), *overruled on other grounds* by *Fisher v. INS,* 79 F.3d 955 (9th Cir.1996) (en banc). We have found imputed political neutrality where the applicant has refused to join a non-governmental guerilla group. *See Alonzo v. INS,* 915 F.2d 546, 549 (9th Cir.1990); *Arteaga,* 836 F.2d at 1227–31. We have also found imputed political opinion where the applicant is a member of a large, politically active family many of whom have already been persecuted for their political beliefs. *Ramirez Rivas v. INS,* 899 F.2d 864, 865–66 (9th Cir.1990). In each of these situations, we have considered it likely that the persecutors will attribute the political views of others to the applicants.

In this petition, Sangha argues that he should fall under the doctrine of imputed political belief. Sangha argues, but without proof, that the BTF imputed to him his father's Akali Dal party views. Past persecution of family members is routinely considered as evidence of possible imputed political opinion. *See, e.g., Gonzalez v. INS,* 82 F.3d 903, 909–10 (9th Cir.1996). In considering such evidence, the trier of fact must examine how close a relationship exists between the persecution of family members and the situation of the applicant. *Arriaga–Barrientos,* 937 F.2d at 414.

Because Sangha did not raise this argument before the BIA, we do not have its findings to review. Even if he did, however, there is little evidence in the record to support Sangha's argument. The BTF never expressly said that it was recruiting Sangha

because of his father's views. The BTF claimed two different motivations. It claimed it was recruiting Sangha to help it gain Khalistan, and to deprive his father of his support. The BTF's actions do not suggest that the BTF imputed to Sangha his father's political views. Indeed, the BTF's actions suggest the contrary. When the BTF came to the Sangha house, it sought only Sangha's father and beat up only Sangha's father. If the BTF had imputed the Akali Dal political views to Sangha, it seems likely that the BTF would also have sought and beat up Sangha. The fact that the BTF ignored Sangha suggests that it did not believe that Sangha held his father's views.

Sangha argues that the BTF would impute his father's views to him because of their family relationship. Unlike the applicant in *Ramirez Rivas*, where we found an imputed political opinion based on family relationships, Sangha was not a member of a large, historically politically active family. Instead, the Sangha family numbered only four, and only one had just recently become politically active. In this case, Sangha needed proof to establish that the BTF would impute the views of his father to him.

Nonetheless, although we find little evidence that the BTF might have erroneously imputed a political opinion to Sangha, we do not decide if the BTF attributed the Akali Dal views to Sangha. As we discuss below, there is no evidence to show that the BTF acted "on account of" any political opinion it imputed to Sangha. We therefore conclude it is irrelevant whether or not the BTF might have attributed a political opinion to Sangha.

(c) Causation-"On account of"

■ Sangha must next show by direct or circumstantial evidence that his persecution occurred "on account of" his political beliefs. *Fisher,* 79 F.3d at 962. Before *Elias–Zacarias,* we held that where, as here, an applicant refused to fight with guerillas, that refusal in itself established that the persecutors were acting "on account of" the applicant's political views. *See, e.g., Maldonado–Cruz,* 883 F.2d at 791; *Arteaga,* 836 F.2d at 1231–32; *Hernandez–Ortiz,* 777 F.2d at 516–17; *Del Valle,* 776 F.2d at 1413–14; *Bolanos–Hernandez,* 767 F.2d at 1286. In these cases, the victim was recruited by a political group. The victim refused, and the political group threatened death if he did not comply. We reasoned in those cases that the victim's refusal showed his political neutrality, which was the equivalent of a political opinion, and that the persecutor's threats were persecution on account of that political opinion.

In *Elias–Zacarias* the Supreme Court instructed us to change course. It held that an applicant's refusal to fight in the context of a forced recruitment is not enough by itself to show that the persecutor acted "on account of" his political views. *Elias–Zacarias,* 502 U.S. at 482–83, 112 S.Ct. at 815–17. The Supreme Court held that to qualify under the Act, the applicant must bring other evidence to show that the persecution was based on political opinion. *See Singh,* 63 F.3d at 1507, citing *Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. at 815–16.

■ *Elias–Zacarias* left open, however, what type of direct or circumstantial evidence might suffice to show motivation. Since *Elias–Zacarias,* we have found persecution on account of political opinion when the persecutors say they are acting because of the victim's political beliefs. *See, e.g., Singh,* 69 F.3d at 379. We have also found such persecution when there is no other logical reason for the persecution. *See, e.g., Nasseri,* 34 F.3d at 729; *Rodriguez–Roman,* 98 F.3d at 429–30. We have also found persecution based on political opinion where a government persecutes a victim in the absence of any actual, legitimate criminal prosecution. *See, e.g., Singh,* 69 F.3d at 379; *Singh,* 63 F.3d at 1508. When the victim claims persecution based on his own actual political opinion, we further require him to show that the persecutor was aware of those beliefs. *Arriaga–Barrientos,* 937 F.2d at 413–14.

In this case, the petitioner offered no evidence to show that the BTF persecuted Sangha "on account of" Sangha's political opinion. We agree with the BIA that Sangha failed to provide direct or circumstantial evidence to show that the BTF sought forcibly to recruit him on account of his political opinion. On this record, it is equally likely that the BTF acted for other reasons.

As noted earlier, the BTF gave two reasons why it wanted to recruit Sangha. First,

it wanted Sangha to help fight for Khalistan. This reason suggests that it was acting in furtherance of its own goals, rather than to persecute Sangha for any views he might hold. Second, the BTF wanted to make Sangha unavailable to support his father. This reason suggests that it wanted to punish Sangha's father, rather than to persecute Sangha for his political beliefs.

If the BTF imputed political neutrality to Sangha, there is no evidence that the BTF singled him out because he was neutral and sought to recruit him because of it. Similarly, if the BTF imputed the Akali Dal party views of Sangha's father to Sangha, there is no evidence that it chose to recruit him especially because he had such views. To the contrary, it seems unlikely that the BTF would deliberately seek out those who opposed it in order to fill its ranks.

In this context, the BIA found no reason to believe that the BTF was motivated by Sangha's political opinion. On the other hand, the proof tended to show that the BTF was not motivated by his political opinion. We agree that the BIA had ample reasons to believe that Sangha did not meet his burden of proof. Certainly, it was not compelled to find otherwise.

PETITION DENIED.