145 F.3d 1337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jaime Antonio GONZALEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-71060.
I & NS No. Aov-ajw-azm.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1998.
Decided June 3, 1998.
 
 1
 Petition to Review a Decision of the Bureau of Immigration Appeals.
 
 
 2
 Before KLEINFELD and CANBY, Circuit Judges, and PANNER,** Senior District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Jaime Antonio Gonzalez is a native and citizen of Guatemala. The Board of Immigration Appeals (BIA) dismissed his appeal from the decision of an Immigration Judge (IJ) denying his applications for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). He petitions for review of the BIA's dismissal. Gonzalez contends that the BIA erred in concluding that he lacked a well-founded fear of persecution by Guatemalan rebel guerrillas. We affirm the BIA.
 
 
 5
 We will uphold the BIA's determination that Gonzalez was ineligible for asylum if it is " 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). The BIA's decision will "be reversed only if the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id. That is, "[t]o obtain reversal, [Gonzalez] must show that the evidence compels a contrary result[.]" Borga v. INS, No. 97-70272, 1998 WL 122383, at * 3 (9th Cir. Mar.20, 1998).
 
 
 6
 The Attorney General has the discretion to grant asylum to any alien who demonstrates that he or she is a refugee. 8 U.S.C. § 1158(a). A refugee is an alien who is "unable or unwilling to return to ... [his or her country of origin] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).
 
 
 7
 Gonzalez maintains that he has a well-founded fear of persecution by Guatemalan rebel guerrillas because of his mother's alleged political opposition to the rebels, evidenced by one-time assistance she provided to a wounded Guatemalan army soldier in 1989. To succeed, Gonzalez must show that the guerrillas actually imputed an anti-rebel political opinion to his mother, and then to him. Sangha v. INS, 103 F.3d 1482, 1489 (9th Cir.1997) (alien must show that the "persecutors actually imputed a political opinion to him.").
 
 
 8
 Both the IJ and the BIA determined that Gonzalez's account of relevant events was not credible. Nonetheless, both the IJ and the BIA concluded that even assuming the truth of the allegations, Gonzalez had not established that any harm he feared suffering at the hand of the guerrillas would be on account of one of the five recognized statutory grounds. We do not address the adverse credibility finding because it is not necessary to our decision.
 
 
 9
 Like the IJ and the BIA, we assume the truth of the following allegations. In 1989, Gonzalez's mother provided medical assistance to a Guatemalan army solider injured while fighting against the guerrillas in Gonzalez's village. Later, when guerrilla soldiers came to Gonzalez's house and asked Gonzalez's mother if she had helped the army, she denied that she had provided any assistance. In response to their question, she told the guerrillas she had no children. Soon after this incident, Gonzalez and his mother fled their village. Gonzalez's mother left Gonzalez with friends in another village and came to the United States. She fears that if she returned to Guatemala, she would be threatened or physically harmed.
 
 
 10
 Gonzalez stayed in Guatemala for four years after the incident. While there, guerrillas never approached him directly. He testified that the guerrillas capture people to fill their ranks. However, when asked why the guerrillas would be looking for him "in particular," Gonzalez admitted that "[i]t wouldn't be that they were looking just for me[.]" Gonzalez left Guatemala in 1994 because he feared the guerrillas would try to forcibly recruit him.
 
 
 11
 In Sangha, an anti-government terrorist group beat and threatened Sangha's father. Id. at 1486. The group also demanded that the father turn Sangha and his brother over to them to aid in their fight for an independent Sikh state. Id. We concluded that Sangha had presented no evidence of an imputed political opinion; the anti-government group never expressly stated that it was recruiting him because of his father's views. Id. at 1489-90. Rather, the group was recruiting Sangha to assist in its mission and to deprive the father of Sangha's support. Id. at 1490. We stated that these actions did not "suggest that the [anti-government group] imputed to Sangha his father's political views." Id. Rather, if the anti-government group had imputed pro-government political views to Sangha, the anti-government group would have beaten him also. Id. The fact that it did not, suggested that it did not believe that Sangha held his father's views. Id.
 
 
 12
 Here, substantial evidence supports a conclusion that the guerrillas have not attributed a political opinion to Gonzalez's mother. However, even assuming they did, substantial evidence supports a conclusion that the guerrillas have not imputed any such opinion to Gonzalez. The guerrillas peacefully left Gonzalez's home after his mother denied helping the army soldier. No evidence suggests that the guerrillas have a particular interest in Gonzalez. The evidence is less compelling than in Sangha. Here, with no violence directed at Gonzalez's mother, who has a different surname than Gonzalez, and with no express statements of recruitment communicated to Gonzalez's mother or to Gonzalez, the evidence does not establish that the guerrillas imputed a political opinion to Gonzalez.
 
 
 13
 Additionally, an alien's refusal to fight in the context of forced recruitment is insufficient, by itself, to show that the persecutor acted "on account of" the alien's political views. Id . Rather, the alien "must bring other evidence to show that the persecution was based on political opinion." Id. There is no "other evidence" in this case.
 
 
 14
 Finally, because Gonzalez fails to demonstrate eligibility for asylum, he necessarily fails to satisfy the more rigorous standard for withholding of deportation. De Leon-Barrios v. INS, 116 F.3d 391, 394 (9th Cir.1997).
 
 
 15
 The petition for review is DENIED.
 
 
 
 **
 The Honorable Owen M. Panner, Senior District Judge for the District of Oregon, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3