147 F.3d 1036
 98 Cal. Daily Op. Serv. 5343, 98 Daily Journal
D.A.R. 7495
Ernesto Antonio VERA-VALERA; Cleta Alcira Martell De Vera;
Leonid Antonio Vera-Martell; Danitza Margarita
Vera-Martell, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70317.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1997.
Decided Sept. 3, 1997.
Withdrawn July 7, 1998.
Decided July 7, 1998.
 
 Charles E. Nichol, San Francisco, California, for petitioners.
 Frank W. Hunger, Francesco Isgro, Donald A. Couvillon, Marion E. Guyton, Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for respondent.
 
 
 1
 Petition to Review a Decision of the Immigration and Naturalization Service.
 
 
 2
 Before: SCHROEDER and KLEINFELD, Circuit Judges, and WALLACH, U.S. Court of International Trade Judge.*
 
 ORDER
 
 3
 The petition for rehearing is granted. The attached opinions are ordered filed. The opinions filed September 3, 1997, are withdrawn.
 
 OPINION
 SCHROEDER, Circuit Judge:
 
 4
 In our original opinion, we held that there was no compelling evidence to overturn the BIA's finding that petitioner failed to show that he was persecuted on account of an actual or imputed political opinion. See 123 F.3d 1302, 1304 (9th Cir.1997). On review of the petition for rehearing and the response, and further review of the record, we conclude that that holding was in error.
 
 
 5
 Ernesto Antonio Vera-Valera, his wife, and two of their children, all nationals of Peru, came to the United States seeking asylum due to death threats from the Maoist guerilla group Sendero Luminoso.
 
 
 6
 In Lima in 1987, petitioner and his wife began selling juices and candies on the street for several hours each evening, after he worked his day job with the government in Lima, Peru. To avoid having to obtain an individual street vendor's license, he joined a cooperative of street vendors.
 
 
 7
 In 1987-1988, petitioner first became a board member, then president of the cooperative. During his presidency, the goal of the cooperative was to build a permanent building in which all of its members could sell their wares. This was important, according to petitioner, because the cooperative's permit to vend on the streets was about to expire, and the municipality was unwilling to renew it. Petitioner was a strong advocate of the construction of that building and used his position as president to advance that goal. Petitioner testified that the cooperative itself had no direct political affiliation, although members of the cooperative had different political ideas.
 
 
 8
 Petitioner testified that he began having problems while he was president of the cooperative, because there were members of the organization who opposed the construction of the building. These opponents were members of Sendero Luminoso. According to petitioner, Sendero Luminoso did not want the vendors off the street because the presence of the vendors in street traffic helped the guerrillas both to disseminate their ideas and to disappear when necessary. Petitioner testified that the opposition to his support for the construction of the building extended beyond the meetings held at the cooperative. He received telephone and written threats during his presidency. He testified that the callers identified themselves as members of Sendero Luminoso and that they warned petitioner that he would be killed if he continued to advocate the construction project. The written threats contained the identifying hammer and sickle symbol favored by Sendero Luminoso.
 
 
 9
 Petitioner's term of office as president ended in 1988, and the building project was not completed by that time. He remained a member of the cooperative for six more months, but then was forced to give up his membership as a result of charges brought against him by those members who had opposed the construction project. He was accused of irregularities with regard to the registration and transfer of deeds for the building. The loss of membership in the cooperative meant that petitioner lost his ability to operate as a street vendor.
 
 
 10
 Petitioner testified that the threats against him had escalated to the point where he feared for his safety if he remained in Peru. It is for this reason that he left Peru and began traveling through Columbia, Panama, Belize, Guatemala, and Mexico. Eventually, he entered the United States without inspection in November of 1989. In 1991 or 1992, a Peruvian court found him innocent, in absentia, of any wrongdoing in the cooperative's affairs. Petitioner testified, however, that he is afraid that if he returns to Peru, he will be killed by the guerrillas because of the positions he took while he was in the cooperative's leadership, which were clearly contrary to the guerillas' goals and views.
 
 
 11
 The immigration judge determined that petitioner had failed to show that "the organizational problems he had while serving as president of the cooperative or thereafter, as a member, were in any way related to political opinion or any other protected statutory ground." See 8 U.S.C. § 1101(a)(42)(A).
 
 
 12
 The BIA went one step further concluding, erroneously that:
 
 
 13
 He has not shown that the construction project was a political issue for individuals on either side of the conflict or that only the Sendero Luminoso opposed it. Therefore, any hardship the respondent may have encountered as a result of the construction project, in particular, or his involvement in the cooperative, in general, was not on account of his political opinion.
 
 
 14
 The evidence compels the conclusion, however, that the project was a political issue both inside the union and as between the government and Sendero Luminoso. Vera-Valera presented uncontradicted testimony that the union members debated the construction issue at meetings of the directorship and of the entire cooperative. Sendero Luminoso opposed the construction project because it preferred vendors to be located on the street, where traffic would facilitate the ability to hide and to disseminate political information. The government supported the construction project because it wanted to move street vendors from the streets to help eliminate these advantages for Sendero Luminoso. In fact, the government would not renew the cooperative's license to sell on the streets.
 
 
 15
 The evidence also showed that only Sendero Luminoso opposed the construction project. Vera-Valera testified that the members of the cooperative who opposed the construction project and threatened Vera-Valera with death were also members of Sendero Luminoso. This evidence, like the evidence of the political nature of the conflict, was undisputed.
 
 
 16
 The BIA held that Vera-Valera had failed to establish that the problems he had while serving as president of the cooperative were related to any political opinion he held. This finding is arguably supported by the record. Petitioner in fact acknowledged that neither he nor the cooperative had any formal political affiliation. However, neither the IJ nor the BIA considered the issue of imputed political opinion, which is also a basis for asylum under 8 U.S.C. § 1101(a)(42)(A). See Sangha v. INS, 103 F.3d 1482, 1489 (9th Cir.1997). "An imputed political opinion is a political opinion attributed to the applicant by his persecutors." Id. In Canas-Segovia v. INS, 970 F.2d 599 (9th Cir.1992), we held that imputed political belief was still a viable form of relief after the Supreme Court's decision in INS v. Elias-Zacarias, 502 U.S. 478, 483-84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). See 970 F.2d at 601-02.
 
 
 17
 In establishing an imputed political opinion, the focus of inquiry turns away from the views of the victim to the views of the persecutor. We consider, however, not the persecutor's own political opinions, but rather the political views the persecutor rightly or in error attributes to his victims. If the persecutor attributed a political opinion to the victim, and acted upon the attribution, this imputed view becomes the applicant's political opinion as required under the Act.
 
 
 18
 Sangha, 103 F.3d at 1489. Imputed political opinion exists where one party to a conflict insists to the victim that the victim is aligned with the other side. See, e.g., Singh v. Ilchert, 63 F.3d 1501, 1509 (9th Cir.1995); Singh v. Ilchert, 69 F.3d 375, 379 (9th Cir.1995); Maldonado-Cruz v. INS, 883 F.2d 788, 792 (9th Cir.1989).
 
 
 19
 The Sendero Luminoso members threatened Vera-Valera with his life because they felt his advocacy for the construction project represented political opposition to Sendero's goals. They told him to quit the cooperative or die and that they would "cut off his ideas" if he continued to advocate them. Conflating his position with that of the government, Sendero Luminoso members accused him of being a spy for the government, a capitalist bureaucrat and a traitor. These statements indicate that Sendero Luminoso believed that Vera-Valera was aligned with the government, whose opposition to the construction project was clearly political. When analyzed in light of our well-established law on imputed political opinion, the record compels the conclusion that the petitioner's undisputed fear of future persecution is on account of political opinion imputed to him by the guerillas.
 
 
 20
 Given the severity and continuity of the threats, Vera-Valera has established the "clear probability" of future persecution required for withholding of deportation under 8 U.S.C. § 1253(h). See Arriaga-Barrientos v. INS, 937 F.2d 411, 412 (9th Cir.1991). Because we conclude that petitioner is entitled to withholding of deportation, it follows that he is eligible for asylum under the less stringent well-founded fear of future persecution standard. Accordingly, we grant the petition for review and withdraw our prior opinion. We remand to the BIA, with directions to grant withholding of deportation and determine whether asylum should be granted.
 
 
 21
 GRANTED.
 
 KLEINFELD, J., concurring:
 
 22
 I concur.
 
 
 23
 As I explained in my dissent to the earlier opinion now withdrawn, see Vera-Valera v. INS, 123 F.3d 1302, 1304-06 (9th Cir.1997), I would not reach the issue of imputed opinion, because in my reading, the record establishes that Mr. Vera-Valera had an actual political opinion for which he was persecuted by Shining Path. He testified that he had "more capitalist views" than Shining Path did, and that the people in Shining Path "were opposed" to his capitalist views. They called him a "capitalist bureaucrat," thereby correctly characterizing his politics and his day job. Shining Path told him that they were going to "cut off your ideas." In the context of this death threat, the word "ideas" refers to Mr. Vera-Valera's actual political opinion.
 
 
 
 *
 The Honorable Evan J. Wallach, United States Court of International Trade, sitting by designation