UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANCISCO CHAVEZ MISOLA,
Petitioner,

v.

No. 97-1929

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-418-366)

Submitted: March 31, 1998

Decided: September 2, 1998

Before WILKINS and NIEMEYER, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Paul Shearman Allen, PAUL SHEARMAN ALLEN & ASSO-
CIATES, Washington, D.C., for Petitioner. Frank W. Hunger, Assis-
tant Attorney General, David M. McConnell, Assistant Director,
Office of Immigration Litigation, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Francisco Chavez Misola, a citizen of the Philippines, seeks review of a Board of Immigration Appeals (BIA) decision and order affirming the immigration judge's decision finding Misola deportable, denying his application for asylum[1] and withholding deportation,[2] and granting voluntary departure. Misola claims that he was persecuted while in the Philippines and that he has a well-founded fear of persecution if he returns to the Philippines. After review, we deny the petition.

To be eligible for refugee status and discretionary asylum, Misola must show a reasonable possibility of persecution, or that a reasonable person in similar circumstances would fear persecution on account of his political beliefs, membership in a particular social group, or one of the other enumerated provisions of the statute. 8 U.S.C.A. §§ 1101(a)(42)(A), 1158 (West Supp. 1998); Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). Factual determinations regarding an alien's statutory eligibility for asylum are reviewed for substantial evidence. 8 U.S.C.A. § 1105a(a)(4) (West Supp. 1998); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The standard is extremely deferential, requiring a reviewing court to uphold the BIA's denial unless an alien demonstrates that the evidence presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Id. at 483-84; Huaman-Cornelio, 979 F.2d at 999. Fear which may be well-founded, but which does not arise on account of an applicant's race, religion, nationality, membership in a social group, or because of political opinion, do not qualify an alien as a refugee. See Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987).

_____

**1** See 8 U.S.C.A. § 1158(a) (West Supp. 1998).
**2** See 8 U.S.C.A. § 1253(h) (West Supp. 1998).

Misola asserts that based on the evidence of record, a reasonable factfinder would have to conclude that he has a well-founded fear of persecution in the Philippines, and that the BIA abused its discretion in reaching the opposite conclusion. We find, however, that substantial evidence supports the BIA's affirmance of the immigration judge's finding that Misola failed to meet his statutory burden. Misola testified at the hearing held by the immigration judge that he was being persecuted by the New People's Army (NPA) throughout the Philippines. Specifically, he claims that the NPA extorted money from him and his fellow landowners, and that those who failed to cooperate, including Misola's cousin, were threatened or killed.[3] According to Misola, he received a note with a black ribbon around it from a small boy. He said the ribbon indicated a death threat. The note requested that Misola pay fifty thousand pesos and gave instructions for its delivery. After receiving the letter, Misola abandoned his farm and left town. He testified that he did not want to pay the money because he did not want to support the communists. He also attested that he did not contact the police or the military because they could not handle the NPA in his area because they were overworked. He testified that he believes that he is on a "black list" and that if the NPA ever found him, they would kill him.

Misola was vague as to his whereabouts during the eighteen months after he left his farm and before he came to the United States, although he did admit that he remained in the Philippines during this time. He further admitted that during that eighteen-month period, he received no threats, despite the active presence of the NPA in the various areas in which he lived.

The immigration judge and the BIA found Misola unable to satisfy the standards for granting asylum or withholding deportation. We agree with the BIA that while Misola may have had a well-founded fear of harm from the NPA for refusing to pay them money, there is no evidence that such harm was politically motivated. In fact, Misola

_____

**3** Misola attested that his cousin, a farm owner like himself, was asked to contribute a sum of money to the NPA, that he refused to pay the money, went into hiding, and was found two days later with his head cut off. Misola testified that this was the usual manner in which the NPA killed those who failed to comply with their tax demands.

specifically denied that he was involved in any political group; he testified that he was not active in politics, and did not support any political actions or groups. He described himself as a "law-abiding citizen" who regularly paid his taxes.

There is no evidence that Misola was singled out by the NPA because of his political views or his membership in a social group. Misola failed to establish that those attempting extortion were motivated by their victims' real or perceived political opinion. Misola testified that the NPA sought money for war taxes from landowners, business people and peasants alike. The record evidence, by way of Misola's testimony as well as the documentary evidence presented, reveals that the purpose for the extortion was for the NPA to obtain financing to further its cause. Moreover, while Misola did not support the goals of the NPA, there is no evidence in the record that his views were known to the NPA. Likewise, while Misola claims on appeal that his fear of persecution was based also upon his status as a wealthy landowner, and that the NPA targeted the wealthy as members of a social group, his own testimony at the hearing before the immigration judge that the NPA also sought money and support from the peasants in the Philippines cuts against this claim.

The existence of a generalized political motive of the NPA is insufficient to establish Misola's fear of persecution on account of political opinion under the applicable statute. See Elias-Zacarias, 502 U.S. at 482. Nor is there evidence that the NPA actually imputed any political opinion to Misola and sought to persecute him based on that imputed opinion,[4] other than background evidence constituting pronouncements of private organizations, which we find to be insufficient by itself to overturn the BIA's judgment. See M.A. v. INS, 899 F.2d 304, 313 (4th Cir. 1990) (in banc).

We conclude that substantial evidence supports the immigration judge's finding that Misola did not meet his statutory burden. While the evidence is undisputed that the NPA is operating in parts of the Philippines and are known to make the type of threats which Misola has described, no threats were made to him after he left his farm, despite the fact that he remained in various parts of the Philippines

_____

[4] See, e.g., Sangha v. INS , 103 F.3d 1482, 1489 (9th Cir. 1997).

4

for eighteen months after he received the note tied with the black rib-bon. Misola also admitted that his sisters continue to live in the Philippines without incident. Further, Department of State country reports in evidence, which reports were considered by the immigration judge, reveal that the NPA is diminishing in size and resources, and in its ability to carry out threats. While there are certainly areas in the Philippines where individuals are vulnerable to the NPA, the evidence supports the conclusion that the Philippine government is able to control the NPA in other areas. Accordingly, the record supports the immigration judge's finding that Misola did not establish that his fear of persecution by the NPA is countrywide. See Matter of Acosta, 19 I. & N. Dec. 211, 235 (BIA 1985).

The record does not compel a finding that the immigration judge erred in concluding that Misola failed to establish a well-founded fear of persecution on account of political opinion or any of the other grounds for which asylum may be granted. See Elias-Zacarias, 502 U.S. at 483-84; Huamon-Cornelio, 979 F.2d at 999. Misola failed to establish that the NPA will persecute him because of his political opinion or his membership in a social group, or that he faces any harm beyond the political unrest in the Philippines itself. See Elias-Zacarias, 502 U.S. at 483; M.A., 899 F.2d at 314-15. We find that the BIA acted reasonably in concluding that Misola failed to show that the NPA's actions were anything other than an attempt to extort money, and that the NPA's interest in Misola was not motivated either by his political opinion or his status as a wealthy landowner.

Because Misola failed to meet the less stringent burden of proof required for asylum, he cannot meet the higher standard for proving eligibility for withholding of deportation under 8 U.S.C.A. § 1253(h) (West Supp. 1998). See INS v. Cardoza-Fonseca , 480 U.S. 421, 431-32 (1987); Huaman-Cornelio, 979 F.2d at 1000.

We therefore affirm the decision of the Board of Immigration Appeals and deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5