Maria Camila **GAMARRA–HORTA**, Petitioner,

v.

Michael B. **MUKASEY**, Attorney General, Respondent.

Maria Camila Gamarra–Horta, Petitioner,

v.

Michael B. Mukasey, Attorney General, Respondent.

Nos. 05–75674, 06–72075.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 2008.

Filed Sept. 29, 2008.

Manuel Rios, III, Rios Cantor, P.S., Seattle, WA, for Petitioner.

Ronald E. LeFevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, OIL, Paul F. Stone, Esquire, DOJ—U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Washington, DC, WWS–District Counsel, Esquire, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, for Respondent.

Before: B. FLETCHER, McKEOWN, and PAEZ, Circuit Judges.

MEMORANDUM *

Maria Camila Gamarra–Horta ("Gamarra"), a Colombian national, petitions for review of the Board of Immigration Appeals' ("BIA") denial of her application for asylum and withholding of removal (No. 05–75674).[1] She also petitions for review of the BIA's denial of her motion to reopen (No. 06–72075). We have jurisdiction under 8 U.S.C. § 1252. Reviewing for substantial evidence, we grant in part and deny in part the petition for review in No. 05–75674. Reviewing for abuse of discretion in No. 06–72075, we deny the petition for review of the BIA's denial of Gamarra's motion to reopen.

After a hearing at which Gamarra and her husband, Luis Indaburo ("Indaburo") testifed, the Immigration Judge ("IJ") denied all of Gamarra's claims for relief.

The IJ determined that Gamarra had not established a nexus between her fear of persecution and a statutorily protected ground, and that further, she had not established that her fear of persecution was objectively reasonable. Gamarra appealed the IJ's decision to the BIA, which summarily affirmed. Gamarra then filed a motion to reopen with the BIA, and submitted, as new evidence, a letter from Major Edgar L. Terrazas, a former Counter Narcotics Field Advisor in the Narcotics Section of the U.S. Embassy in Bolivia.

***No. 05–75674: Application for Asylum and Withholding of Removal***

1. **Nexus to Political Opinion**

To establish eligibility for asylum and withholding of removal, a petitioner must show that she fears persecution "on account of" one of the grounds in the statute, such as political opinion. *See* 8 U.S.C. § 1101(a)(42)(A); *Navas v. INS*, 217 F.3d 646, 654 (9th Cir.2000). We have long held that political opinion encompasses imputed political opinion, which "is a political opinion attributed to the applicant by his persecutors." *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir.1997). The imputed political opinion inquiry focuses not on the petitioner's own views, "but rather the political views the persecutor rightly or in error attributes to his victims." *Id.* *See also Ramirez Rivas v. INS*, 899 F.2d 864, 867 (9th Cir.1990).

█ The record here compels the conclusion that the Cali cartel[2], a narco-traf-

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Although Gamarra applied for relief under the Convention Against Torture ("CAT") before the Immigration Judge, and the BIA addressed the claim in dismissing her appeal, Gamarra did not address the merits of her CAT claim in her Opening Brief before this

court. Therefore Gamarra has waived this ground for relief in her direct challenge to the Immigration Judge's adverse ruling.

2. The record is replete with evidence that NTOs are entities the Colombian government is not able or willing to control. *Cf. Ochoa v. Gonzales*, 406 F.3d 1166, 1170 (9th Cir.2005) (discussing the Colombian government's ina-

ficking organization (NTO) in Colombia, would impute a political opinion to Indaburo and Gamarra. The record contains extensive evidence demonstrating that in Colombia, the NTOs have a complicated relationship with the Colombian government, in which they are engaged in a de facto civil war with the government for control of the levers of political and economic power, and at the same time exercise considerable power over the operations of government by corrupting law enforcement and other government officials. The record also conclusively establishes that the United States is deeply entangled in this conflict, exerting immense pressure on the Colombian government to eradicate the NTOs, and offering considerable resources in aid of those efforts. The record similarly provides that NTOs in Colombia view themselves at war with the United States; they see the Drug Enforcement Agency (DEA) as their *"political* enemy." *See Sagaydak v. Gonzales,* 405 F.3d 1035, 1044 (9th Cir.2005) (emphasis in original) (noting that alien's work for a government agency made him the political enemy of a corrupt and powerful organization).

In light of Colombia's tumultuous and violent relationship with NTOs, and in turn with the United States' efforts to infiltrate and control NTOs, working for the DEA would undoubtedly be considered a political opinion by the Cali cartel. *See Sagaydak,* 405 F.3d at 1043 (holding that uncovering corruption in a private organization

was "undeniably a political statement in the context of [Ukraine's] evolving politics."); *see also Briones v. INS,* 175 F.3d 727, 729 (9th Cir.1999) (en banc) (holding that "Briones's activity as a confidential informer who sided with the Phillipine military in a conflict that was political at its core certainly would be perceived as a political act by the group informed upon....").

Despite the fact that working for the DEA against an NTO is an act brimming with political meaning in Colombia, the Government contends that any retaliation by the Cali cartel would be merely personal retribution. Even if persecutors are "motivated in part by personal retribution," *see Sagaydak,* 405 F.3d at 1044, however, we have long held that "the statute covers persecution on account of political opinion even where the persecutor acts out of mixed motives. Put another way, the protected ground need only constitute *a* motive for the persecution in question...." *Navas,* 217 F.3d at 656 (emphasis in original). *See also Singh v. Ilchert,* 63 F.3d 1501, 1509 (9th Cir.1995) ("[P]ersecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements have been satisfied.").[3] Although members of the Cali cartel might take personal pleasure in retaliating against a DEA informant and his wife, that additional motivation does not eliminate the political basis for the retaliation.[4]

---

bility and unwillingness to control narco-trafficking violence).

**3.** We recently held that the Real ID Act places a more onerous burden of proof on an asylum applicant, requiring her to show that a protected characteristic was "at least one central reason" for her persecution, replacing our previous "at least in part" standard. *Parussimova v. Mukasey,* 533 F.3d 1128, 1134 (9th Cir.2008). Gamarra filed her asylum applica-

tion before the effective date of the Real ID Act, and so we apply the "at least in part" standard here.

**4.** The Government argues that even if working for the DEA is political, Gamarra has not shown that the cartel would impute that opinion to *her.* The record compels the conclusion that Gamarra has established otherwise: Gamarra was warned by a member of the cartel that *both* she and her husband were in

### 2. Objectively Reasonable Fear of Future Persecution

An asylum petitioner must show both a subjective fear and an objectively reasonable fear of future persecution. *Canales–Vargas v. Gonzales,* 441 F.3d 739, 743 (9th Cir.2006). Substantial evidence does not support the IJ's determination that Gamarra failed to demonstrate the objective component of her asylum claim.

To establish asylum eligibility, a petitioner must show that there is a ten percent chance that she will face persecution. *Id.* ("Even a ten percent chance that the applicant will be persecuted in the future is enough to establish a well-founded fear.") (quoting *Sael v. Ashcroft,* 386 F.3d 922 (9th Cir.2004)). We have described this as a "low standard." *Id.* at 746. Both Gamarra and Indaburo's testimony, as well as the documentary evidence, compel the conclusion that her fear of persecution is objectively reasonable—that there is at least a ten percent chance that the Cali cartel will discover Indaburo's DEA work through its extensive network of informants, and persecute Gamarra and Indaburo on account of it.[5] We therefore reverse the IJ's denial of Gamarra's asylum application and remand for the exercise of the Attorney General's discretion with respect to asylum.

The record before the IJ, however, does not compel the conclusion that Gamarra faces a clear probability of future persecution. Therefore, Gamarra has not established entitlement to withholding of removal and we deny the petition as to that claim. *Cf. Canales–Vargas,* 441 F.3d at 747 (concluding that although the threats received by petitioner "establish a ten-percent probability of future persecution," they do not establish "the clear probability of it").

### *No. 06–72075: Motion to Reopen*

We review for abuse of discretion the BIA's denial of a motion to reopen. *Singh v. INS,* 295 F.3d 1037, 1039 (9th Cir.2002). Here, the BIA considered Gamarra's new evidence, a letter from retired Major Terrazas assessing the threat to Gamarra from the Cali cartel, and determined that it would not change the ultimate result.[6] Because the BIA's reasons for concluding that the new evidence was not material were neither arbitrary nor capricious, the BIA did not abuse its discretion in denying the motion to reopen. We therefore deny the petition for review.

In No. 05–76574, the Petition is GRANTED in part, DENIED in part, and REMANDED.

In No. 06–72075, the Petition is DENIED.

---

danger. *See Sagaydak,* 405 F.3d at 1042 (noting that to establish a nexus to political opinion the asylum applicant must establish that the husband had an imputed political opinion, and that the husband and wife were targeted on account of it).

5. The record establishes that once outed, the threat to Indaburo and Gamarra would be overwhelming. The likelihood of persecution, therefore, turns mainly on the probability that the NTO has discovered or will discover Inda-

buro's work. Indeed, as Gamarra testified, she has already been warned by a family friend with ties to the cartel that she and Indaburo are in danger.

6. Because Gamarra's motion to reopen is moot as to her claim for asylum, we limit our consideration of her challenge to the denial of the motion to reopen to the claims for withholding of removal and CAT relief.