NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0546n.06

No. 12-3802

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 04, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| VERONIKA NIKOLAJUK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW FROM |
| | ) THE BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) APPEALS |
| | ) |
| Respondent. | ) |
| | ) |

Before: COLE and COOK, Circuit Judges; KATZ, District Judge[*]

COOK, Circuit Judge. Veronika Nikolajuk, a native and citizen of Belarus, seeks review of

a Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") denial

of her claims for asylum, withholding of removal, and protection under the Convention Against

Torture ("CAT"). For the following reasons, we DENY the petition.

I.

Nikolajuk lawfully entered the United States in June 2006 using a J1 visa. Instead of

departing when her visa expired that September, she sought asylum on the ground that she feared

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of
Ohio, sitting by designation.

political persecution from Belarusian police. The Department of Homeland Security ("DHS") charged her as removable for overstaying her visa. *See* 8 U.S.C. § 1227(a)(1)(B). In April 2009, Nikolajuk, through counsel, conceded removability and sought asylum, withholding of removal, and protection under the CAT.

Nikolajuk, the sole witness at her removal hearing, testified as follows. As a teenager, she read some of her cousin's political science books, which caused her to question the Belarusian government's policies. She did not, however, express these political objections until enrolling at Belarusian State University. While living in the school dorms, she joined a "secret group" of students who opposed the Belarusian government. The extent of her involvement in the dissident group, however, remains uncertain, as her affidavit and testimony conflict on this point. In her asylum affidavit, Nikolajuk claimed to have participated in a mass meeting taking place near the university dorms in March of 2006, but during her removal hearing, she disavowed any personal involvement in the demonstration and asserted that it was her boyfriend, Sasha, who actively supported the protesters by bringing them food. Sasha's contribution to the protest netted him two days in jail. Sometime after his release, authorities searching for Sasha found him in Nikolajuk's dorm room and began beating him. When Nikolajuk intervened, a police officer pushed her out of the way, causing her to strike her head against the wall. In her affidavit, she claimed that one of the officers told her to keep quiet about the injury, warning that no one would believe her. She did not mention this threat during the removal hearing.

Next, Nikolajuk attested that, in late April 2006, two men in police uniforms attacked her during the night, raping and beating her as she walked to her dorm room. She testified that one of her attackers told her no one would believe her if she came forward about the attack, but in her asylum affidavit, she reported that he threatened to kill her if she reported the rape. Additionally, although her affidavit states that she "somehow" reached a hospital soon after the attack, she testified that she waited until the following day to seek treatment. And her mother's letter gave a different date for the hospitalization altogether—several days *before* the alleged attack. Though Nikolajuk submitted documents confirming that she was hospitalized around this time, the hospital records list the reason as "a chronic disease" and kidney trauma. Furthermore, she claimed that she visited her OB-GYN, but this visit appears nowhere in the records. Nikolajuk never reported the rape, explaining that she feared police retaliation and that no one would believe her. Last, she mentioned some conversations with her mother that suggested the police inquired about Nikolajuk's whereabouts. Nevertheless, she admitted that police never issued any warrant for her arrest, as she broke no laws prior to leaving Belarus.

The translator scheduled for Nikolajuk's merits hearing failed to show, so a telephonic interpreter—who struggled to keep up with Nikolajuk's "rambling" answers—filled in. The IJ repeatedly cautioned Nikolajuk to slow down and speak in "clear and short[] statements," but she failed to heed these instructions. At the close of the hearing, the IJ orally denied all of Nikolajuk's claims for relief, concluding that she was not credible. Alternatively, the IJ held that Nikolajuk's testimony, if credited, did not rise to the level of persecution on a protected ground.

Nikolajuk appealed to the BIA, which upheld the IJ's credibility findings and its conclusion that she failed to present a "nexus" between her alleged harm and a statutorily protected ground. It also rejected Nikolajuk's claimed prejudice resulting from the telephonic interpretation. She timely petitioned this court for review.

II.

A. Standard of Review

"Where, as here, the BIA affirms an IJ's ruling and adds its own comments, we review both the IJ's decision and the BIA's additional remarks." *Lateef v. Holder*, 683 F.3d 275, 279 (6th Cir. 2012) (alteration and internal quotation marks omitted). We apply a substantial evidence standard to the BIA's factual findings, including its credibility assessment, reversing only if the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992). In this post-REAL ID case, the IJ could take into account the totality of the circumstances when making its credibility assessment. This includes: "the consistency between the applicant's . . . written and oral statements . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009).

B. Asylum

To qualify for asylum, an applicant must demonstrate that she fits 8 U.S.C. § 1101(a)(42)(A)'s definition of a refugee: an alien who is unable or unwilling to return to their home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1)(A). Proof of past persecution raises a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1).

First, we consider Nikolajuk's challenge to the BIA's and IJ's adverse credibility findings. Reviewing Nikolajuk's application and testimony, the BIA noted numerous inconsistencies that diminished her credibility. For example, she testified that after the sexual assault, one police officer warned that no one would believe her if she reported the rape. Yet in her written affidavit, she claimed that the officer threatened to kill her if she told anyone about the assault. The BIA also noted that Nikolajuk gave different dates for when the police came to her room searching for Sasha and when she went to the hospital. Furthermore, the BIA—though giving Nikolajuk the benefit of the doubt regarding why she never reported the rape—explained that her claimed OB-GYN visit "rais[ed] the question why the medical document [was] limited solely to [Nikolajuk's] kidney injury." Nikolajuk argues that these inconsistencies resulted from translation errors, but her hearing testimony undermines this claim. She answered "no" to the question "are you having a hard time understanding the translator[?]" and she fails to specify how the translator misinterpreted her testimony. In any event, an allegedly faulty translation leaves unanswered the BIA's question regarding Nikolajuk's undocumented OB-GYN visit. Moreover, the IJ did not have to credit her

explanation over a reasonable alternative. *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005). Therefore, because substantial evidence supported the BIA's credibility assessment, we see no reason to disturb its findings.

Even accepting her testimony as true, Nikolajuk's story lacks a "nexus" between her alleged persecution and any of the statutorily protected grounds. She correctly points out that one such ground is an "imputed political belief," but nevertheless fails to show that this applies to her case. Though emphasizing that Belarusian authorities regularly persecute students who oppose the government, she admits that authorities never arrested or abused her because of her personal involvement in such political matters. Thus, her claims fall short of establishing persecution because of *her own* political leanings, imputed or otherwise. *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997) (finding that asylum applicants cannot "establish that their persecution was 'on account of' political opinion by inference, unless the inference is one that is clearly to be drawn from facts in evidence"). The incident in the dorm room bears even less of a relationship to a protected ground, given that the police injured Nikolajuk because she interfered with her boyfriend's arrest. Thus, Nikolajuk's "imputed political opinion" argument is not well-taken, as she presents no evidence "from which it is reasonable to believe that the harm was . . . motivated in part by an actual or imputed protected ground." *See Lleshi v. Holder*, 460 F. App'x 520, 525 (6th Cir. 2012) (finding no nexus between rape and protected ground, where petitioner's attacker was the son of a local communist leader, and petitioner belonged to a group disfavored by that party) (citing *Matter of J-B-N & S-M-*, 24 I. & N. Dec. 208, 211 (BIA 2007)); *see also Sokoli v. Holder*, 458 F. App'x 493 (6th

Cir. 2012) (same, where asylum was based on alleged kidnapping and attempted rape which petitioner attributed to her father's political activity).

Next, Nikolajuk argues that the law does not require her to show she would be "singled out individually," provided she can demonstrate "a pattern or practice . . . of persecution" over a "group of persons similarly situated to the applicant." Fair enough. Yet her membership in such a group remains unverified and, even if credited, she alleges no facts suggesting Belarusian police know about this affiliation. Although she does claim that her former boyfriend was an active participant in a student group challenging the Belarusian government, she expressly disavowed any personal participation in the group's activities. (AR 259 ("I had nothing to do directly with this meeting [supporting the opposition's candidate].").) These facts, providing sufficient evidence for the BIA's conclusions, do not compel reversal.

## C. Withholding of Removal and CAT Relief

Nikolajuk submits that the BIA's denial of her applications for withholding of removal and CAT relief lacked evidentiary support, compelling reversal. Like the IJ, the BIA hinged its decision on Nikolajuk's failure to present credible testimony or corroborating evidence regarding her alleged abuse. *See* 8 C.F.R. § 1208.16(b) ("The burden of proof is on the applicant for withholding of removal under [the INA] to establish that his or her life or freedom would be threatened in the proposed country of removal on account of . . . political opinion."); *id.* § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more

likely than not that he or she would be tortured if removed to the proposed country of removal.").

To merit withholding or removal, an alien must demonstrate a "clear probability" of persecution,

which is a stricter standard than the "well-founded fear" standard applicable to asylum applications.

*Ceraj v. Mukasey*, 511 F.3d 583, 594 (6th Cir. 2007). Unable to carry the less demanding burden,

Nikolajuk's withholding of removal and CAT-claims—based on the same facts and argument—also

falter. *Id.*

III.

For the foregoing reasons, we DENY Nikolajuk's petition for review.