Mor SENE, Petitioner,

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 01–3278.

United States Court of Appeals, Third Circuit.

Argued Oct. 16, 2002.

Decided Dec. 11, 2002.

Catholic Legal Immigration Network, Inc., Ran Z. Schijanovich (Argued), Newark, NJ, for Petitioner.

Robert D. McCallum, Jr., Assistant Attorney General, Allen W. Hausman, Senior Litigation Counsel, Office of Immigration Litigation, Michele Y.F. Sarko, Julia K. Doig (Argued), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

Before BECKER, Chief Judge, ROTH and ROSENN Circuit Judges.

## OPINION OF THE COURT

BECKER, Chief Judge.

Mor Sene ("Sene"), a Senegalese asylum-seeker, has petitioned for review of a decision of the Board of Immigration Appeals ("BIA"), denying his application for asylum, withholding of removal, and for relief under the Convention Against Torture ("CAT"). The source of Sene's asylum claim lies in an ongoing conflict in the southern region of Senegal known as the Casamance, from which Sene hails. The Senegalese government is engaged there in sporadic armed conflict with the Movement of Democratic Forces in the Casamance ("MFDC"), a rebel group seeking the independence of the Casamance.

Sene's challenge essentially is based on the notion that he has been caught in the middle of the conflict between the MFDC and the government. On the one hand, he contends that if returned to Senegal he will face persecution by the MFDC, which he claims tortured him in the past for refusing to join their ranks. On the other hand, he maintains that the Senegalese government believes that he has aided the MFDC and that the government will persecute him if he is returned to Senegal.

We conclude that Sene fails on the first claim—persecution by the MFDC—because he cannot show that the MFDC tortured him "on account of" his "political opinion." *See* 8 U.S.C. § 1158(a) (giving the Attorney General the discretion to grant asylum to "refugees," which are defined by 8 U.S.C. § 1101(a)(42)(A) as those

persons who are unwilling or unable to return to their country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"). Even if Sene could demonstrate that he was persecuted by the MFDC on account of his political opinion, he fails on this claim because he could relocate to other regions of Senegal where the MFDC holds no sway. *See* 8 C.F.R. § 208.13(b)(1)(i)(B) (denying asylum when relocation is reasonable).

With respect to the second claim—persecution by the Senegalese government—Sene's credibility was called into question by the BIA because his testimony conflicted with certain information contained in his passport and national identity card. Sene submits that the BIA did not consider his explanations for the discrepancies when he was denied relief. Although we decline to grant relief to Sene outright both on the merits and in light of the Supreme Court's recent decision in *INS v. Ventura*, —— U.S. ——, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), we will grant the motion brought by the INS requesting that we vacate the decision of the BIA with respect to Sene's claim of persecution by the government and remand so that the credibility issues can be reached in further proceedings.

## I.

Sene is a citizen of Senegal and a member of its Wolof ethnic majority. Although born in the capital city of Dakar, Sene moved to the Casamance as a boy, where he worked with his family as a farmer. As noted above, the Casamance region is home to the MFDC, an armed opposition group which demands the independence of Casamance from the rest of the country. The Senegalese military has been embroiled in a conflict with the MFDC, which

occasionally erupts in violence, for more than 20 years. According to Sene, the following events transpired commencing in October of 1997.

At that time, Sene learned that the MFDC was about to attack his village, Bignona, and he fled to the nearby forest where he hid to avoid being captured by the rebels. Although Sene was able to avoid being captured this time, he returned home to find that the MFDC had killed his younger brother during the attack. Sene was not so lucky when the MFDC again attacked Bignona in November of 1999. He claims that the MFDC kidnaped him and dragged him to the forest where they tied him to a tree, beat him violently, and questioned him about the Senegalese military. The rebels wanted Sene to join them, and upon his refusal, they tortured him. Sene claims that they beat him, cut his leg with a razor, removed two of his toe nails and stabbed him in the chest and leg. The MFDC kept Sene hostage in the forest for two days without food or clean water. When they were done, the rebels left him there, believing that he was close to death. A local farmer happened upon Sene in the forest and brought him back to Bignona where he lay in bed for a month recovering from his injuries.

In March 2000, the MFDC returned to Bignona a third time, but Sene was able to flee to a soccer stadium controlled by the military of the Senegalese government where many residents of Casamance took refuge. Sene remained in the stadium for four months, under the watchful eye of the military. Although forbidden to do so by the military, Sene left the stadium to locate his mother and sister. Returning to Bignona, he found that the MFDC had burned down most of the homes in the village, but he could not locate his mother or sister. On his way back to the stadium,

Sene encountered a friend who told him that the military knew that he had left the stadium and that they were looking for him because they believed he had left to give information to the MFDC. A guard at the stadium confirmed the account, telling Sene that the military thought he was giving information to the MFDC, and that the military would kill him if they found him. Sene fled to the home of a friend of his deceased father in Dakar, where he found his mother and sister staying.

Concerned that the military would kill him because they suspected he was supplying information to the MFDC, Sene decided to leave the country. The family friend in Dakar helped Sene obtain a false passport so that he could leave the country without alerting the Senegalese government. His mother raised enough money for a plane ticket to the United States. Sene traveled to Burkina Faso and boarded a plane that eventually brought him to the United States.

Sene arrived in the United States using a forged Guinean passport containing a false U.S. visa. The Immigration and Naturalization Service ("INS") detained Sene on suspicion of carrying a forged passport and visa, at which time the officers learned Sene's true identity when they discovered his real passport among his possessions. Sene's passport, as well as the identity card issued to him by the government of Senegal, listed Dakar as his residence and stated that he was employed as a mason— which contradicted Sene's account that he was a farmer from Casamance. The INS issued a notice to appear charging Sene with being inadmissible and removable at the time of application for admission to the United States. After removal proceedings were commenced, Sene filed applications for asylum, withholding of removal, and protection against removal under the CAT.

Sene appeared before the Immigration Judge ("IJ") *pro* se. Since Sene does not speak English, the hearings were conducted through a Wolof translator. The IJ gave an oral decision, about which the BIA noted in its written opinion that the IJ "concluded that [Sene's] testimony 'on many occasions' was not believable, and that he had not ... demonstrated past persecution in Senegal or a well-founded fear of future persecution.... [T]he alleged treatment of [Sene] by the MFDC was not shown to have been related to his political opinion and [there was] no credible evidence that the Senegalese military would have any interest in [Sene]." [A15].

Sene—now represented by counsel—appealed this decision to the BIA, which affirmed the findings of the IJ that Sene could not demonstrate that he was in danger of persecution for his political opinions by either the MFDC or the government of Senegal. The BIA found that the MFDC tortured Sene because of his refusal to join them and not because of his political opinions. Moreover, the BIA found that even if he was persecuted for his political opinion, the MFDC has "little influence in, and no control over, other parts of the country [other than the Casamance,]" [A16] and that Sene could have simply relocated to another region of Senegal to avoid future persecution. As for Sene's claim that he is in danger of persecution by the Senegalese government, the BIA concluded that Sene had "not shown that the government would have any interest in punishing him on account of any of the grounds for asylum." [Id.]. Finally, the BIA declined to grant relief to Sene on the CAT claim, finding that Sene did not demonstrate that it was more likely than not that he would be tortured if he returned to Senegal since "[t]he only interest the government of Senegal may have in [Sene] is the clarification of his relationship with the MFDC." [Id. at 17].

Before this Court, the INS filed a motion requesting that we remand to the BIA for further proceedings on the following: (1) Sene's claim of a well-founded fear of persecution on account of imputed political opinion by the government; (2) the significance of the State Department Country Reports and other exhibits regarding country conditions in Senegal contained in the record; (3) the letter from a family friend introduced by Sene at his immigration hearing; and (4) a credibility determination regarding Sene's testimony. The motion panel provisionally denied INS' motion and ordered briefing to proceed on the merits.

■ We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) to review final orders of removal. Factual determinations made by the BIA are reviewed to determine whether they are supported by substantial evidence. *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir.1998). However, we must uphold the BIA's findings of fact unless the evidence compels otherwise. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 3, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (holding that to reverse the BIA, "we must find that the evidence not only *supports* that conclusion, but *compels* it"). We summarily deny Sene's request for relief under the CAT for the reasons set forth in the margin,[1] and now turn to his remaining claims.

## II.

Sene urges us to conclude that the BIA erred when it held that he did not qualify for protection as a refugee because he was not persecuted for his political opinion by the MFDC. As we noted earlier, the Attorney General has the discretion to grant asylum only to those applicants demonstrating "a well-founded fear of persecution on account of ... political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). Sene's first contention is that his refusal to join the MFDC is *ipso facto* an expression of his political opinion. However, this argument is clearly foreclosed by *INS v. Elias–Zacarias*, where the Supreme Court held that "[e]ven a person who supports a guerilla movement might resist recruitment for a variety of reasons—fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." 502 U.S. at 482, 112 S.Ct. 812. Moreover, the Court in that case declined to adopt the contention that "not taking sides with any political faction is itself the affirmative expression of a political opinion." *Id.* at 483, 112 S.Ct. 812.

■ In *Elias–Zacarias*, the Court concluded that the applicant, a Guatemalan citizen, had not established that the record compelled the conclusion that he had a well-founded fear of persecution by the guerillas on account of his political opinion where he refused to join the guerillas because they "are against the government and he was afraid that the government would retaliate against him and his family if he did join the guerillas." *Id.* at 480, 112 S.Ct. 812 (internal quotations omitted).

---

1. Under 8 C.F.R. § 208.16(c)(2), an applicant for relief under the CAT must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." While a showing of past torture may demonstrate that it is more likely than not that future torture will occur, proof that Sene was tortured by the MFDC is not sufficient for relief because the CAT defines torture as that which "is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 208.16(c)(3), 208.18(a)(1). Since Sene's strongest piece of evidence is his own testimony that he was told that the military was looking for him, we conclude that the BIA's determination that Sene has not met the elevated "more likely than not" standard does not compel reversal.

Similarly, Sene's testimony that he would rather die than join the rebels [A107] does not establish that his refusal to join was motivated by his political opinion. Although Sene now claims that we should remand the case—if we do not grant his petition outright—for further consideration of his explanation for why his passport and identity card state that he is a mason from Dakar, while he testified that he is a farmer from the Casamance, we conclude that even if his explanation would make his testimony more believable to the BIA, Sene cannot set forth a claim for persecution by the MFDC on account of his political opinion even assuming his testimony is credible.

In the alternative, Sene contends that he was persecuted on account of his political opinion because the MFDC *imputed* a political opinion to him when he refused to join them; the imputed political opinion is that "the MFDC is not a group that he supports and that he does not agree with their goals and tactics." [Blue Br. at 18]. At first glance, the claim that an asylum-seeker could succeed by showing that he was persecuted on account of an imputed political opinion seems to be in conflict with *Elias–Zacarias*. In *Elias–Zacarias*, the Supreme Court held that the "ordinary meaning of the phrase 'persecution on account of ... political opinion' ... is persecution on account of the *victim's* political

opinion." 502 U.S. at 482, 112 S.Ct. 812. However, this language in *Elias–Zacarias* was made in reference to the holding that "the mere existence of a generalized 'political' motive underlying the guerillas' forced recruitment is inadequate to establish ... persecution *on account of* political opinion." *Id.* This apparently does not foreclose the concept of persecution on account of a specific imputed political opinion, and in *Balasubramanrim v. INS*, this Court held that "persecution may be on account of a political opinion the applicant actually holds or on account of one the foreign government has imputed to him." 143 F.3d 157, 165 n. 10 (3d Cir.1998). Moreover, other Courts of Appeals have endorsed the concept of persecution on account of imputed political opinion, as set forth in the margin.[2]

Under these precedents, an asylum-seeker can make a claim based on the fact that his persecutor has imputed a particular political opinion to him. But in the case at bar, Sene has not shown that the MFDC imputed any political opinion to him. We reiterate that there are any number of reasons, many of which are not based on political opinion, that might motivate the refusal to join a rebel group. *See* discussion *supra*. The MFDC could have believed that Sene refused to join their ranks because of one of those non-political

---

**2.** *See Al Najjar v. Ashcroft,* 257 F.3d 1262, 1289 (11th Cir.2001) (acknowledging that proof of an imputed political opinion would have qualified as persecution "on account" of political opinion under the INA); *Morales v. INS,* 208 F.3d 323, 331 (1st Cir.2000) ("There is no doubt that asylum can be granted if the applicant has been persecuted or has a well-founded fear of persecution because he is erroneously thought to hold a particular political opinion."); *Lwin v. INS,* 144 F.3d 505, 509 (7th Cir.1998) ("One way that an applicant can establish 'political opinion' under the INA is to show an imputed political opinion."); *Sangha v. INS,* 103 F.3d 1482, 1489

(9th Cir.1997) ("If the persecutor attributed a political opinion to the victim, and acted upon the attribution, this imputed view becomes the applicant's political opinion and required under the Act."); *Desir v. Ilchert,* 840 F.2d 723, 729 (9th Cir.1988) ("[W]hether the political opinion is actually held or implied makes little difference where the alien's life is equally at risk."); *Cruz–Diaz v. INS,* 86 F.3d 330, 332 (4th Cir.1996) (denying applicant's petition for review based on the finding that "[t]he evidence does not compel the conclusion that [the applicant] will be subjected to persecution or other harm based on actual or imputed opinion").

reasons. We conclude that since *Elias–Zacarias* mandates that refusing to join a rebel group is not itself an expression of political opinion, it also forecloses the argument that the rebel group imputed a political opinion to the asylum-seeker based only upon his refusal to join them. Sene produced no evidence, other than his own refusal, that the MFDC imputed a political opinion to him.

At all events, even if we assume *arguendo* that Sene was persecuted on account of his political opinion, this claim still fails, since he could simply relocate within Senegal to avoid future persecution by the MFDC. Under 8 C.F.R. § 208.13(b)(1)(i)(B), the finding of past persecution will show a well-founded fear of future persecution unless "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality ... and under all the circumstances, it would be reasonable to expect the applicant to do so." The BIA found that "[t]he MFDC apparently has little influence in, and no control, over other parts of the country." [A16]. This conclusion was bolstered by the 1999 State Department Country Reports on Human Rights Practices for Senegal ("Country Reports") which noted that "[s]poradic fighting continued in the Casamance area in the southern part of the country." [A203]. From this, the BIA concluded that Sene could simply relocate to any area of Senegal other than the Casamance in order to avoid future persecution by the MFDC. Importantly, the BIA found that it would be reasonable to expect Sene to relocate since he is a member of the Wolof ethnic majority which Sene testified "are all over in Senegal." [A118].

Finally, Sene appears to have connections in the capital city of Dakar that would make it feasible for him to relocate there. Sene testified that his mother and sister have already relocated to Dakar to live with a family friend. [A114.] Sene was also born in Dakar, although he later moved to the Casamance with his family. [A94]. For these reasons, we also conclude that the BIA did not err when it denied relief to Sene based on the fact that he could avoid persecution by the MFDC by relocating within Senegal and that it would be reasonable to expect him to do so.

### III.

Sene also contends that we should grant relief to him on the claim that he has shown a well-founded fear of persecution by the Senegalese government on account of a political opinion that the government has imputed to him. He bases this claim on the fact that he was told that the government believed he left the military-controlled stadium to give information to the MFDC. Sene submits that the BIA did not grant him asylum on this claim because it did not believe that the government was looking for him or that the government would persecute him. He maintains that the BIA might have found his testimony more credible if it had fully considered the explanations for certain discrepancies between his testimony and the information contained in his passport and identity card.

Sene's passport and identity card listed his occupation as a mason and represented that he was from Dakar, which was in conflict with his testimony that he was a farmer from the Casamance. Sene explains that he gave his residence as Dakar because "it was better to list his address as that of his father's friend in Dakar because if stopped by authorities and asked to show his documents, it could be dangerous for him to be listed as living in the Casamance area." [Blue Br. at 16]. Moreover, Sene claims that he listed his occupation as a mason instead of a farmer because "it would be easier for him to find

employment in construction" and he "wanted to start working in construction." [Id.]

The BIA's opinion supports Sene's contention that the IJ did not believe much of his testimony, noting that "[w]hile the [IJ] did not make a specific credibility finding in her decision, she did call into question some aspects of [Sene's] claims, such as his alleged occupation as a farmer and his residence in the Casamance region." [A15]. Sene contends that the BIA simply adopted the credibility determination of the IJ and did not perform a *de novo* review. The BIA did not explain why it denied relief to Sene on this claim, noting simply that "[t]o the extent that [Sene] is seeking asylum and withholding of removal based on a fear or persecution by the government of Senegal, we conclude that he has not shown that the government would have any interest in punishing him on account of any of the grounds for asylum." [A16].

Sene urges us to consider his explanations for the discrepancies and to grant him asylum outright if we find his testimony to be credible in light of the explanations.[3] However, the Supreme Court recently held in *INS v. Ventura*, that the Court of Appeals should have remanded to the BIA instead of deciding an issue *de novo* that the BIA had failed to consider. —— U.S. ——, ——, 123 S.Ct. 353, 354, 154 L.Ed.2d 272 (2002). Likewise, if the BIA did not consider Sene's explanations for the discrepancies, as Sene himself alleges, we are constrained to remand.

■ Sene also requests that we remand to the IJ so that Sene will be able to fully explain the discrepancies before the IJ; Sene was not represented by counsel when he was before the IJ initially, and he maintains that the explanations contained in his testimony are not complete. The INS, on the other hand, requested in an earlier motion that we remand to the BIA for further proceedings.[4] In *Abdulai v. Ashcroft*, we held that we review only the decision of the BIA and not that of the IJ in most cases. 239 F.3d 542, 548–49 (3d Cir.2001). Unless the BIA expressly adopted or deferred to the IJ's opinion, we review only the decision of the BIA. *Id.* Although Sene contends that the BIA effectively adopted the IJ's decision, since the BIA did not expressly do so, we review only the BIA's decision and we can remand only to the BIA. Since the BIA may have denied relief to Sene because it questioned the credibility of his testimony, and granting the INS' motion, we will vacate the

---

**3.** Even if we could grant Sene's application for asylum outright, the INS maintains that we do not have enough information upon which to base that decision. Sene submitted new evidence to this Court: a psychological report documenting his Post Traumatic Stress Disorder as Appendix C; and a doctor's examination of his injuries noting they are consistent with his testimony about the torture that took place at the hands of the MFDC as Appendix D. However, the INS correctly observes that we cannot consider this information. *See* 8 U.S.C. § 1252(b)(4)(A) (noting that the Court of Appeals "shall decide the petition only on the administrative record on which the order of removal is based"); *Goonsuwan v. Ashcroft*, 252 F.3d 383, 390 n. 15 (5th Cir.2001) ("It is a bedrock principal of

judicial review that a court reviewing an agency decision should not go outside the administrative record." (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Since Sene did not file a motion to reopen before the BIA to have the BIA first review the new evidence, he cannot present this evidence for the first time here. 8 C.F.R. §§ 3.2(a) and (c).

**4.** As noted above, the motion was provisionally denied by a motions panel so that the parties could brief the issue on the merits. But it remains open before the merits panel, as the INS declined to withdraw the motion, following a query posed at oral arguments.

decision of the BIA and remand for further proceedings.

Among the things that the BIA might consider on remand are the following: (1) the significance of the State Department Country Reports and other exhibits regarding country conditions in Senegal contained in the record; (2) the letter from a family friend about the atrocities committed by the MFDC introduced by Sene at his immigration hearing and translated for the record by the interpreter;[5] (3) whether the BIA took this evidence into consideration in making any credibility findings regarding Sene's testimony; and (4) Sene's explanation of why his passport and identity card state that he is a mason from Dakar, which contradicts his testimony that he is a farmer from Casamance.

For the foregoing reasons, we will deny Sene's petition for review on the claim that he has demonstrated a well-founded fear of persecution by the MFDC, but we will grant the agency's motion to remand to the BIA for further proceedings on the claim that Sene has demonstrated a well-founded fear of persecution by the government of Senegal.

---

5. The letter reads:

I was really happy to learn of your arrival in the United States of America.... Allah is great because he saved you being that all we know about the problem you encountering [sic] in your region of Casamance precisely in the village of Binjorna [sic] really the situation is becoming worse with the same rebels, MFDC. They are killing the population. They arresting [sic] the population to join them in their group.... The militaries [sic] came to your house and they messed up your house and they have arrested my husband, your father's friend last month because of your problem and you have really not, you've never given any information about the rebels. [A132–133].