

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2004

# Sene v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2636

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Sene v. Atty Gen USA" (2004). *2004 Decisions.* Paper 601.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/601

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2636

MOR SENE,
Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,
Respondents

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A78-416-310)

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2004

Before:  RENDELL, STAPLETON and LAY*, <u>Circuit</u> <u>Judges</u>.

(Filed: June 9, 2004)

OPINION OF THE COURT

---

*Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by
designation.

RENDELL, Circuit Judge.

On appeal before us, Mor Sene challenges the determination of the Board of Immigration Appeals that he does not have a well-founded fear of persecution at the hands of the security forces of Senegal due to their belief that he aided a rebel group, the Movement of Democratic Forces in the Casamance ("MFDC"). We have jurisdiction under 8 U.S.C. § 1252. We will deny Sene's petition for review.

I.

As we write solely for the parties, our recitation of the facts will be limited to those facts necessary to our determination.[1] In November 1999, the MFDC rebels descended upon Sene's town of Bignona, in southern Senegal, and tried to forcibly conscript him. At that time, the rebels tortured and left him for dead in the forest. When the rebels returned to Bignona in March 2000, Sene fled the town and took refuge in a soccer stadium administered by the Senegalese military. After four months in the stadium, Sene requested to return to Bignona to locate his mother and sister. Sene claims that the military advised or demanded that he not go. Sene left anyway. Upon arrival at Bignona, Sene found that his family was not there and that several houses had been burned down. When Sene tried to return to the stadium, he was approached by a friend who told him that the military was looking to question him on his leaving the stadium to return to

_____

[1]The facts of Sene's asylum petition are extensively detailed in an earlier opinion of this Court. Sene v. Ashcroft, 54 Fed. Appx. 753, 755–56 (3d Cir. 2002).

2

Bignona. A guard at the stadium also told Sene that the military suspected him of aiding the MFDC and would kill him if they found him. Consequently, Sene decided to leave Senegal.

Sene arrived in the United States in September 2000 with a fake passport from Guinea, but an inventory search upon his detention resulted in finding the true passport, a valid passport from Senegal. He was charged as inadmissible because he was not in possession of a valid visa or other entry document. At the removal proceedings, Sene filed applications for asylum, withholding of removal, and protection against removal under the Convention Against Torture.

The Immigration Judge denied Sene's applications, which decision the BIA affirmed. On appeal, this Court denied Sene's petition for review but granted a motion to remand to the BIA for the limited purpose of further proceedings on his claim of a well-founded fear of persecution by the government of Senegal, i.e., not the MFDC. See Sene, 54 Fed. Appx. at 761.

On remand, the BIA noted at the outset that Sene's petition did not turn on an issue of credibility. Rather, it turned on Sene's ability to demonstrate he had a well-founded fear of persecution by the government should he return to Senegal. The BIA observed that the incidents of brutality to which Sene testified were due to actions taken by the MFDC and not the military.

The BIA then commented on Sene's testimony regarding the Senegalese military's

3

interest in harming him. The BIA concluded, "As we noted in our prior order, . . . the government may be interested in the respondent to clarify his relationship with the MFDC. However, it has not been demonstrated that the government harbored or harbors an interest in harming him on account of one of the protected grounds." The BIA then turned to examine the country conditions as set forth in the State Department reports, and the documentary evidence submitted by Sene. The BIA acknowledged that these reports reflected that "human rights abuses have been committed by both sides in the conflict in the Casamance in recent years." However, the BIA concluded that the evidence did not show that the government would refuse Sene the opportunity to explain his interest in returning to Bignona, but would, instead, harm or kill him because he was a MFDC sympathizer. The BIA supported this conclusion by referring to the country report's description of the Senegalese military as professional and under civilian control.

II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution, and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to

establish eligibility for asylum, as long as the testimony is credible. See 8 C.F.R. § 208.13(a).

Our review is limited to ensuring that any findings are supported by substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir.2003) (en banc). We may reverse the IJ's decisions only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

On appeal, Sene argues that the 2002 State Department report on Senegal, relied upon by the BIA, actually undermines the BIA's conclusion that he has no well-grounded fear of future persecution. Sene references portions of the country report that arguably support his claims that there continues to be hostility in the Casamance region, and that the Senegalese military persecutes rebel sympathizers.

Admittedly, the country report did not paint a rosy picture of the conflict in the Casamance region. The report noted that while the government and the MFDC rebel group signed two cease-fire agreements in March 2001, peace in Casamance remained fragile and some fighting continued. The country report also noted several incidents of government forces engaging in human rights abuses. As Sene points out, the country report also acknowledged that "[g]overnment forces reportedly were responsible for extrajudicial killings in the troubled Casamance region, including some civilian deaths." Further, the Senegalese government "often did not try to punish members of the military,

5

gendarmerie, or police for human rights abuses." Despite these observations, however, the country report is generally sanguine about conditions in Senegal.

With respect to the questionably effective peace agreements in the Casamance region, the country report noted that the government was continuing its efforts to broker peace in the region and had agreed to hold new peace talks with rebel leaders. Indeed, following the signing of a peace accord with the MFDC on March 16, the government released 16 rebel sympathizers, presumably as a sign of good faith. Moreover, despite these reported incidences of brutality, the country report characterized the Senegalese army as professional, generally disciplined, and under civilian control.

The country report thus contains good and bad news. Focusing solely on the negative observations about the Senegalese military, Sene contends that the report undermines the BIA's conclusions. Yet a country report can constitute substantial evidence for a BIA's determination even if it is arguably equivocal. In <u>Kayembe v. Ashcroft</u>, 334 F.3d 231 (3d Cir. 2003), the petitioner contended that the BIA unreasonably relied on a relevant country report. That report contained observations that supported the BIA's determination that the government of the Congo was no longer persecuting Tutsis, while not being uniformly optimistic. For example, the report noted Congo's abandonment of its policy to arrest and detain Tutsis without charge; but the report also acknowledged that the government had arrested 30 Tutsis on account of their ethnicity. However, we held that the BIA was justified in seeing the glass as half-full.

6

"Just because the State Department report cuts both ways, however, does not mean that it does not constitute substantial evidence." Id. at 236–37. Similarly, the country report on Senegal, though arguably equivocal, nevertheless constitutes substantial evidence to support the BIA's conclusion that Sene did not demonstrate that the "government of Senegal would harbor an interest in persecuting [him] over an incident which occurred nearly 3 years ago." It constitutes substantial evidence because a reasonable fact-finder could find reasons for both pessimism and optimism in the country report. Either perspective is a plausible interpretation of the country conditions, and thus a reasonable fact-finder would not be compelled to conclude that the requisite fear of persecution existed.

IV.

Accordingly, we conclude that the BIA opinion and determination were supported by substantial evidence, and we will DENY Sene's Petition for Review.